750 So.2d 643 (1999)
STATE of Florida, Petitioner,
v.
Carol Leigh THOMPSON, Respondent.
No. 92,831.
Supreme Court of Florida.
December 22, 1999.
Rehearing Denied February 22, 2000.
*644 Robert A. Butterworth, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, Robert J. Krauss, Senior Assistant Attorney General, Chief of Criminal Law, Tampa, and Susan D. Dunlevy, Tampa, and Edward C. Hill, Jr., Tallahassee, Assistant Attorneys General, for Petitioner.
James Marion Moorman, Public Defender, and Richard J. Sanders, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Respondent.
PER CURIAM.
We have for review Thompson v. State, 708 So.2d 315 (Fla. 2d DCA 1998), in which the Second District Court of Appeal held unconstitutional chapter 95-182, Laws of Florida. Specifically, the court found that chapter 95-182 violates the single subject rule contained in article III, section 6 of the Florida Constitution. See Thompson, 708 So.2d at 317. In so holding, the Second District acknowledged conflict with the Third District's decision in Higgs v. State, 695 So.2d 872, 873 (Fla. 3d DCA 1997), wherein the court rejected a single subject rule challenge to section 95-182. We have jurisdiction. See Art. V, § 3(b)(1), (3), Fla. Const. As set forth more fully below, we agree with the Second District's decision in Thompson and find that chapter 95-182 violates the single subject rule.

I. FACTUAL BACKGROUND IN THE PRESENT CASE
On January 25, 1996, the State of Florida (the State) filed an information against Carol Leigh Thompson (Thompson), charging her with three criminal offenses which occurred on November 16, 1995. These offenses included robbery with a firearm, aggravated battery of a person over the age of sixty-five, and possession of a firearm by a convicted felon. The robbery with a firearm charge was a first-degree felony punishable by life; the aggravated battery charge was a first-degree felony; and the firearm possession charge was a second-degree felony.
After charging Thompson with these felony offenses, the State filed a notice of intent to have her sentenced as a "Habitual Felony/Habitual Violent Felony Offender/Violent Career Criminal" pursuant to section 775.084, Florida Statutes (1995). The version of section 775.084 applicable in Thompson's case had been amended by the passage of chapter 95-182, which became effective on October 1, 1995. See Ch. 95-182, § 12, at 1675, Laws of Fla. Under *645 chapter 95-182, sections 2 through 7 of which are entitled the "Officer Evelyn Gort and All Fallen Officers Career Criminal Act of 1995" (the Gort Act), see id. § 1, at 1665, the Legislature, among other things, created the "violent career criminal" sentencing category for certain criminal offenders. See id. § 2, at 1665. In sections 8 through 10 of chapter 95-182, the Legislature addressed several aspects of domestic violence. See id. §§ 8-10, at 1673-75.
In response to the State's notice of intent, Thompson filed a motion to preclude the trial court from sentencing her as a violent career criminal and to declare unconstitutional chapter 95-182, claiming that the chapter law violated the single subject rule. The trial court denied Thompson's motion, and she then entered a plea of nolo contendere conditioned upon her right to appeal that denial. On May 21, 1996, the trial court sentenced Thompson as a violent career criminal to forty years in prison on the firearm possession charge, with a thirty-year minimum mandatory term, and life in prison on the robbery with a firearm and aggravated battery charges, with all of the sentences to run concurrently with one another.[1] Thompson appealed and, as stated above, the Second District reversed the trial court's determination and found that chapter 95-182 violates the single subject rule. We now have that constitutional issue before us for determination.

II. STANDING TO CHALLENGE CHAPTER 95-182 ON SINGLE SUBJECT RULE GROUNDS
All of the provisions contained in chapter 95-182 became effective on October 1, 1995. See Ch. 95-182, § 12, at 1675. According to the Second District's decision in Thompson, the applicable window period for challenging chapter 95-182 on single subject rule grounds opened on October 1, 1995, and closed on May 24, 1997, the date on which chapter 97-97, Laws of Florida, reenacted the provisions contained in chapter 95-182 as part of the Legislature's biennial adoption of the Florida Statutes. See Thompson, 708 So.2d at 317 n. 1 (relying on State v. Johnson, 616 So.2d 1, 2 (Fla.1993)). In other words, according to the Second District's determination in Thompson, persons who committed their criminal offenses on or after October 1, 1995, and before May 24, 1997, and were sentenced as violent career criminals for those offenses, have standing to challenge chapter 95-182 on single subject rule grounds. On review before this Court, the parties in Thompson did not dispute the Second District's determination regarding the applicable window period.
While Thompson was pending before this Court, however, the Fourth District *646 issued its decision in Salters v. State, 731 So.2d 826, 826 (Fla. 4th DCA 1999), wherein the court certified conflict with the Second District's decision in Thompson regarding the window period issue. Specifically, the Salters Court held that the defendant in that case, who committed his offense on April 27, 1997, did not have standing to challenge the violent career criminal sentence imposed upon him because "the opportunity to challenge his sentence, based upon the constitutionality of the statute, ended on October 1, 1996." Id. In support of this holding, the Fourth District cited its prior decision in Scott v. State, 721 So.2d 1245, 1246 n. 1 (Fla. 4th DCA 1998), wherein the State argued that the enactment of chapter 96-388, Laws of Florida, with an effective date of October 1, 1996, cured any alleged single subject rule problems in chapter 95-182. Although the Scott Court expressed no opinion as to the close of the window period because the defendant in that case committed his offense outside the window period identified in Thompson, see Scott, 721 So.2d at 1246 n. 1, the Salters Court apparently accepted the argument espoused by the State in Scott.
As a result of the Salters decision, this Court requested supplemental briefing from the parties in Thompson regarding the window period issue.[2] In their supplemental briefs, both the State and Thompson correctly note that even if the window period identified in Salters is appropriate, Thompson would still have standing to challenge chapter 95-182 on single subject rule grounds because she committed her offenses on November 16, 1995.[3] In light of this fact, we decline to rule in this case as to when the window period closed for persons claiming that their violent career criminal sentences are invalid due to the amendments affected by chapter 95-182, noting that Thompson clearly has standing to make such a claim here.

III. SINGLE SUBJECT RULE ANALYSIS
We turn now to the question of whether chapter 95-182 violates article III, section 6 of the Florida Constitution, which provides, in pertinent part, that "[e]very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." This constitutional provision is commonly referred to as the single subject rule, and this Court previously has discussed the purposes underlying that rule.
In State ex rel. Flink v. Canova, 94 So.2d 181, 184 (Fla.1957), which is quoted in the decision below, see Thompson, 708 So.2d at 316, this Court agreed with the analysis of a legal scholar who had set forth a three-fold purpose underlying single subject rules contained in various state constitutions:
(1) to prevent hodge podge or "log rolling" legislation, i.e., putting two unrelated matters in one act; (2) to prevent surprise or fraud by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and (3) to fairly apprise the people of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon.
More recently, this Court stated:
The purpose of this constitutional prohibition against a plurality of subjects in a single legislative act is to prevent "logrolling" where a single enactment becomes a cloak for dissimilar legislation having no necessary or appropriate connection *647 with the subject matter. State v. Lee, 356 So.2d 276 (Fla.1978). The act may be as broad as the legislature chooses provided the matters included in the act have a natural or logical connection. Chenoweth v. Kemp, 396 So.2d 1122 (Fla.1981).
Johnson, 616 So.2d at 4 (quoting Martinez v. Scanlan, 582 So.2d 1167, 1172 (Fla. 1991)). Thus, in analyzing whether chapter 95-182 meets the requirements of the single subject rule, it is clear that we must review the various sections of that chapter law to determine whether they have a natural or logical connection.
Chapter 95-182 is comprised of twelve subsections. See ch. 95-182, §§ 1-12, at 1665-75. Section 1 of the chapter law provides that sections 2 through 7 may be cited as the Gort Act, see id. § 1, at 1665, while sections 11 and 12 provide for severability and the effective date of the chapter law. See id. §§ 11, 12 at 1675. Thus, the substantive portions of the chapter law are contained in sections 2 through 10.
In section 2 of chapter 95-182, the Legislature substantially amended section 775.084, Florida Statutes. For example, the Legislature created and defined the "violent career criminal" sentencing category, adding that new sentencing category to the already existing habitual felony offender and habitual violent felony offender sentencing categories. See Ch. 95-182, § 2, at 1667 (amending section 775.084(1)(c), Florida Statutes). In addition, the Legislature added "aggravated stalking" to the list of qualifying offenses for the habitual violent felony offender category. See Ch. 95-182, § 2, at 1666 (adding section 775.084(1)(b)1.l., Florida Statutes). Also, the Legislature established sentencing procedures for violent career criminals and modified the sentencing procedures for habitual felony offenders and habitual violent felony offenders. See Ch. 95-182, § 2, at 1668-70 (creating section 775.084(3)(a)6.-(3)(c)3.; creating section 775.084(4)(c)). Finally, the Legislature limited the amount and types of gain-time for which violent career criminals would be eligible. See Ch. 95-182, § 2, at 1670 (creating section 775.084(4)(j)2., Florida Statutes).
In sections 3 through 6 of chapter 95-182, the Legislature amended several sections of the Florida Statutes relating to procedural matters involving habitual felony offenders, habitual violent felony offenders, and violent career criminals. See Ch. 95-182, §§ 3-6, at 1670-73 (amending sections 775.08401, 775.0841, 775.0842, and 775.0843, Florida Statutes, respectively). In section 7 of chapter 95-182, the Legislature created and defined the criminal offense of "possession of a firearm by violent career criminal" and also established sentencing procedures and penalties for that offense. See Ch. 95-182, § 7, at 1673 (creating section 790.235, Florida Statutes).
In section 8 of chapter 95-182, the Legislature amended section 741.31, Florida Statutes (Supp.1994), by creating a civil cause of action for damages (including costs and attorney's fees) for "[a]ny person who suffers an injury and/or loss as a result of a violation of an injunction for protection against domestic violence." Ch. 95-182, § 8, at 1673-74. In section 9 of the chapter law, the Legislature created section 768.35, Florida Statutes, to provide a cause of action for victims of continued domestic violence, in which such victims may recover both compensatory and punitive damages from the perpetrator responsible for the violence. See Ch. 95-182, § 9, at 1674. Finally, in section 10 of the chapter law, the Legislature amended section 784.046, Florida Statutes (Supp.1994), to impose certain procedural duties on clerks of court and law enforcement officers regarding the filing and enforcement of domestic violence injunctions. See Ch. 95-182, § 10, at 1674-75.
After reviewing the various sections of chapter 95-182, we find it clear that those sections address two different subjects: career criminals and domestic violence. The State argues that the subject of chapter 95-182 is the penalties to be imposed *648 upon recidivist criminal offenders, and the object is to reduce crime by imposing more severe sanctions on those criminal offenders. However, as the Second District observed: "Nothing in sections 2 through 7 addresses any facet of domestic violence and, more particularly, any civil aspect of that subject. Nothing in sections 8 through 10 addresses the subject of career criminals or the sentences to be imposed upon them." Thompson, 708 So.2d at 317. We agree with the Second District's observation.
Further, a review of the legislative history surrounding chapter 95-182 supports a finding that the chapter law does not meet the requirements of the single subject rule. In the decision below, the Second District correctly tracked the legislative history of the Senate Bill 168, which became chapter 95-182, noting that the domestic violence provisions that were added to the chapter law originated in three separate bills in the House of Representatives, none of which were passed. See Thompson, 708 So.2d at 316-17. In addition to the legislative history discussed in the decision below, it should be noted that the original version of Senate Bill 168, and the version sent to the House of Representatives from the Senate, were originally entitled, "An act relating to career criminals," before being changed to read, "An act relating to justice system [sic]." See Fla. SB 168 (1995); Fla. H.R. Jour. 1207-12 (Reg.Sess.1995). Importantly, the amendments made by the House of Representatives which, among other things, changed the title as stated above and added the domestic violence provisions to chapter 95-182, were made on the floor of the house on May 4, 1995, very near the end of the regular legislative session. See Fla. H.R. Jour. 1207-12 (Reg.Sess.1995). We agree with the Second District's observation that "[i]t is in circumstances such as these that problems with the single subject rule are most likely to occur." Thompson, 708 So.2d at 317.
Finally, comparing the present case with prior decisions from this Court involving single subject rule challenges supports a finding that chapter 95-182 is violative of the single subject rule. The State attempts to analogize the present case to decisions in which this Court rejected single subject rule challenges brought against comprehensive laws that were passed to address various crises specifically identified by the Legislature. See Burch v. State, 558 So.2d 1, 2-3 (Fla.1990) (involving challenge to chapter 87-243, Laws of Florida, in which the Legislature identified crisis in increasing crime rate); Smith v. Department of Ins., 507 So.2d 1080, 1085-87 (Fla.1987) (involving challenge to chapter 86-160, Laws of Florida, in which the Legislature identified crisis in the availability of commercial liability insurance); Chenoweth v. Kemp, 396 So.2d 1122, 1124 (Fla.1981) (involving challenge to chapter 76-260, Laws of Florida, in which the Legislature identified crisis in the tort law/medical malpractice liability insurance system); State v. Lee, 356 So.2d 276, 282-83 (Fla.1978) (involving challenge to chapter 77-468, Laws of Florida, in which the Legislature identified crisis in tort law/automobile insurance system). In the case of chapter 95-182, however, the Legislature has not identified a broad crisis encompassing both career criminals and domestic violence. Instead, it is clear that in passing chapter 95-182, the Legislature addressed two different subjects in one chapter law, similar to the situations presented in State v. Johnson, 616 So.2d 1 (Fla.1993), and Bunnell v. State, 453 So.2d 808 (Fla. 1984), where this Court struck down the chapter laws at issue as being violative of the single subject rule. See Johnson, 616 So.2d at 4 (involving chapter 89-280, Laws of Florida, which addressed both habitual felony offender sentencing and the licensing of private investigators and their authority to repossess personal property); Bunnell, 453 So.2d at 809 (involving chapter 82-150, Laws of Florida, which created the crime of obstruction of justice and made amendments regarding the Florida *649 Council on Criminal Justice). Therefore, for the reasons expressed above, we hold that chapter 95-182, Laws of Florida, is unconstitutional as violative of the single subject rule contained in article III, section 6 of the Florida Constitution. In so holding, we approve the Second District's decision in Thompson and disapprove the Third District's decision in Higgs.
We realize that our decision here will require the resentencing of a number of persons who were sentenced as violent career criminals under section 775.084, Florida Statutes, as amended by chapter 95-182. We also realize that a number of persons affected by other amendments contained in chapter 95-182 may rely on our decision here in obtaining relief, such as persons who committed their offenses during the applicable window period and were sentenced as habitual violent felony offenders based on the qualifying offense of aggravated stalking, as well as those persons who were convicted of possession of a firearm by violent career criminal for an offense which occurred during the applicable window period.[4] However, as this Court stated in Johnson, "This result is mandated by the [L]egislature's failure to follow the single subject requirement of the constitution." 616 So.2d at 4. Had the Legislature complied with the single subject rule, this case would not be before us today.

IV. RESENTENCING ON REMAND
Based on the foregoing, it is clear that Thompson's case must be remanded for resentencing. Where a defendant commits an offense during the applicable window period but is sentenced after the unconstitutional chapter law has been cured, see Goggins v. State, 623 So.2d 590, 590 (Fla. 2d DCA 1993); Lowe v. State, 612 So.2d 625, 625 (Fla. 1st DCA 1993), it would be improper to resentence the defendant under the valid laws in effect at the time of the original sentencing because those valid laws would include the unconstitutional chapter law that has been cured. See Goggins, 623 So.2d at 590 (rejecting trial court's ruling that defendant could be sentenced under chapter law that had been cured where the defendant's offense date fell within the window period, stating that "the relevant time period in this matter is the date the offense was committed"); see also Lowe, 612 So.2d at 625 (reversing defendant's sentence because his offense date fell within the window period, despite the fact that he was sentenced after the unconstitutional chapter law had been cured). Although that is not the situation in this case, we still find that resentencing here should be in accordance with the valid laws in effect at the time Thompson committed her offenses. Accordingly, this cause is remanded for resentencing in accordance with the valid laws in effect on November 16, 1995, the date on which Thompson committed her offenses.
It is so ordered.
HARDING, C.J., SHAW and PARIENTE, JJ., and OVERTON and KOGAN, Senior Justices, concur.
WELLS, J., dissents with an opinion.
WELLS, J., dissenting.
I dissent. I am persuaded by the reasoning of Judge Wolf's opinion in Trapp v. State, 736 So.2d 736 (Fla. 1st DCA 1999), as confirmed by the recent opinion in Crawford v. State, 743 So.2d 1136 (Fla. 1st DCA 1999). In Trapp, the court states:
All portions of the legislation in the instant case deal with remedies for acts which constitute crimes. While the latter sections of the bill deal with civil remedies relating to domestic violence, the acts of domestic violence contained within these sections constitute crimes. See § 741.28(1), Fla. Stat. Thus, as in *650 Burch v. State [558 So.2d 1 (Fla.1990) ], the overall purpose of this statute can be determined to be crime prevention.
I agree that this Court's decision in Burch v. State, 558 So.2d 1 (Fla.1990), can be so read.
I conclude that the fact that three district courts out of the four which have ruled on this issue have found the statute sustainable against the one-subject challenge supports the conclusion that the basis for this challenge has not been sufficiently demonstrated. Historically, this Court has afforded to the Legislature wide latitude in determining what comes within the proper subject of legislation. In State v. Lee, 356 So.2d 276, 282 (Fla.1978), this Court stated:
The purpose of the constitutional prohibition against a plurality of subjects in a single legislative act is to prevent a single enactment from becoming a "cloak" for dissimilar legislation having no necessary or appropriate connection with the subject matter. E.g., Colonial Inv. Co. v. Nolan, 100 Fla. 1349, 131 So. 178 (1930). This constitutional provision, however is not designed to deter or impede legislation by requiring laws to be unnecessarily restrictive in their scope and operation. See State ex rel. X-Cel Stores, Inc. v. Lee, 122 Fla. 685, 166 So. 568 (1936). This Court has consistently held that wide latitude must be accorded the legislature in the enactment of laws, and this Court will strike down a statute only when there is a plain violation of the constitutional requirement that each enactment be limited to a single subject which is briefly expressed in the title.

(Emphasis added.) Furthermore, this Court has long proclaimed that there is a strong presumption in favor of the constitutionality of statutes, that it resolves all doubt in favor of the constitutionality of a statute, and that an act will not be declared unconstitutional unless it is determined to be invalid beyond a reasonable doubt. Burch, 558 So.2d at 3. It seems to me the decisions in favor of constitutionality by these three district courts, at the very least, demonstrate that the statute is not unconstitutional on the basis of those tests.
Moreover, these are sound rules of construction observing the constitutional requirement for separation of powers pursuant to article II, section 3 of the Florida Constitution. These are likewise sound rules of construction because of the great disruption in government by this Court declaring a statute unconstitutional.
Thus, I would approve Higgs v. State, 695 So.2d 872 (Fla. 3d DCA 1997), and Hill v. State, 740 So.2d 581 (Fla. 5th DCA 1999), in which the Third District and Fifth District upheld the constitutionality of the act, and quash Thompson.
NOTES
[1] The trial court's oral pronouncement at the sentencing hearing clearly shows that Thompson was sentenced as a violent career criminal:

Based on my understanding of the statute I adjudicate you guilty, ma'am, of all three counts having previously accepted your plea as being freely and voluntarily entered. As to Counts 1 and 2[I] sentence you to life. As to Count 3 I sentence you to 40 years Florida State Prison with a 30 year minimum mandatory. All sentences to be served concurrently with each other and pursuant to the violent career criminal statute pursuant to my calculations.
Record on Appeal at 176; accord § 775.084(4)(c), Fla. Stat. (1995) (setting forth permitted sentences for those qualifying as violent career criminals). However, the corrected written sentencing order entered by the trial court indicates that Thompson was sentenced on all counts as a habitual violent felony offender. See Record on Appeal at 80-86. This corrected written sentencing order is inconsistent with the trial court's oral sentencing pronouncement; in such a situation, the oral pronouncement controls. See, e.g., State v. Williams, 712 So.2d 762, 764 (Fla. 1998) (citing Justice v. State, 674 So.2d 123, 125 (Fla.1996), for the proposition that "there is a judicial policy that the actual oral imposition of sanctions should prevail over any subsequent written order to the contrary"); Driver v. State, 710 So.2d 652, 653 (Fla. 2d DCA 1998) (stating that "[w]hen a written order does not conform to the trial court's oral pronouncement, the oral pronouncement controls").
[2] We issued the order requesting supplemental briefing on July 6, 1999, and such briefing was completed on August 16, 1999.
[3] On the merits, the State argues that the Fourth District's ruling in Salters is correct, while Thompson argues that the Second District in Thompson correctly identified the window period for challenging chapter 95-182 on single subject rule grounds.
[4] We express no opinion in this case as to the applicable window period for persons challenging either a habitual violent felony offender sentence or a conviction for possession of a firearm by a violent career criminal.