766 So.2d 259 (2000)
Andrew BUSBY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D98-2784.
District Court of Appeal of Florida, Fourth District.
February 16, 2000.
*261 Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Andrew Busby appeals his convictions for felony causing bodily injury, attempted second degree murder with a deadly weapon, armed burglary of a structure, robbery with a deadly weapon, dealing in stolen property, and grand theft of a motor vehicle.
The convictions arose out of an incident that occurred on December 13, 1996, at the business premises of Ranger Communication of America ("Ranger"). Ranger's business involved the construction and repair of communications towers. Kimberly Towers was the secretary/office manager for Ranger. That day, she arrived at work between 8:15 and 8:30 a.m. Between the building housing Ranger's office and a warehouse was a fenced-in lot. Ranger used the lot as a storage yard. Only Ranger employees were allowed to park there. Towers parked in the lot on December 13 and walked outside the fence to the front door of the office. She opened the door and turned off the alarm. She turned on the coffee pot, computers, and fax machine and opened up the blinds.
She went into the warehouse to get water for her coffee. To go there, she walked through two swinging doors secured by a deadbolt lock. In the warehouse, the only lights on were "little emergency lights," indicating that no one else was present.
Towers entered the warehouse, but did not turn on the lights. Ranger used the warehouse to store its construction tools. After she filled the coffee pot with water, Towers turned to go back through the swinging doors. Busby hit her over the head. Towers recognized her attacker and then blacked out. She did not regain consciousness until December 27, 1996. Towers suffered seven fractures of her sinus area, jaw, and cheekbones. She underwent 10 operations. She is partially paralyzed and requires the use of a walker. Busby took Towers's car, purse, and jewelry in addition to tools from the warehouse.
At trial, Busby defended by arguing that he lacked the requisite criminal intent due to his insanity. The jury found Busby guilty as charged on all six counts of the information.
On appeal, Busby first challenges his conviction for armed burglary of a structure. Section 810.02(1), Florida Statutes (1999),[1] defines burglary:
"Burglary" means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.
Busby relies on Miller v. State, 733 So.2d 955, 957 (Fla.1998), which held that "if a defendant can establish that the premises *262 were open to the public, then this is a complete defense [to burglary]."
Miller does not control this case, because when viewed in the light most favorable to the state, the evidence indicates that the crimes occurred in the warehouse area, which was not open to the public. See Thomas v. State, 742 So.2d 326 (Fla. 3d DCA 1999); Johnson v. State, 737 So.2d 555 (Fla. 1st DCA), rev. granted, No. 96,234 (Fla. Nov. 5, 1999); Dakes v. State, 545 So.2d 939, 940 (Fla. 3d DCA 1989). Ranger's business was not a retail store, but a construction business. The warehouse was the area where its construction tools were stored. The warehouse was separated from the business office by double doors secured by a deadbolt lock. There was a demarcation between the office area, which was open to actual and potential clients, and the warehouse area which was open only to Ranger staff.
Busby next argues that his convictions for both a felony causing bodily injury and attempted second degree murder violate the double jeopardy clause of the Fifth Amendment of the United States Constitution.
The Fifth Amendment's Double Jeopardy Clause affords three basic protections. "`[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Ohio v. Johnson, 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (quoting Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969))). This case concerns the third protection, against multiple punishments for the same offense imposed in a single proceeding. This component of double jeopardy,
is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are "multiple" is essentially one of legislative intent.
Johnson, 467 U.S. at 499, 104 S.Ct. 2536 (citations omitted). If the statutes under which a defendant has been convicted specifically authorize cumulative punishments for the same conduct, a court may impose cumulative punishment without offending the Double Jeopardy Clause. See Missouri v. Hunter, 459 U.S. 359, 368-69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). "Absent evidence of clear legislative intent to the contrary, courts presume that where two statutory provisions proscribe the same offense, a legislature does not intend to impose two punishments for that offense." Gibbs v. State, 698 So.2d 1206, 1209 (Fla. 1997).
Where the legislative intent to authorize separate punishments is not explicitly stated in a statute, Florida double jeopardy analysis applies the "same elements" test set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). See M.P. v. State, 682 So.2d 79, 81 (Fla.1996). The same elements test "inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars subsequent punishment or prosecution." Boler v. State, 678 So.2d 319, 321 (Fla.1996) (citations omitted). The test is applied only to the statutory elements of the crimes involved, not to the pleadings or the proof introduced at trial. See State v. Enmund, 476 So.2d 165, 169 (Fla.1985) (Shaw, J., concurring specially).
Section 775.021(4)(a), Florida Statutes (1999), expresses the legislature's intent that a defendant be sentenced "separately" for "separate" criminal offenses arising from one criminal transaction. See State v. Smith, 547 So.2d 613 (Fla.1989). To determine whether criminal offenses are *263 "separate" within the meaning of the statute, the legislature has codified the Blockburger test. See id. at 615-16.
(4)(a) ... For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
§ 775.021(4)(a) & (b), Fla. Stat. (1999).
Count I of the information charged the defendant with a felony causing bodily injury, contrary to section 782.051(1), Florida Statutes (Supp.1996), which provides:
Any person who perpetrates or attempts to perpetrate any felony enumerated in s. 782.04(3) and who commits, aids, or abets an act that causes bodily injury to another commits a felony of the first degree....
Sections 782.04(3)(d) & (e) identify the crimes of robbery and burglary, such that they are felonies falling under the umbrella of section 782.051(1).
Count II of the information charged the defendant with attempted second degree murder contrary to sections 777.04 and 782.04(2), Florida Statutes (1995). Section 777.04(1) criminalizes an attempt "to commit an offense prohibited by law." Section 782.04(2) defines second degree murder as,
[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual.
Attempted second degree murder and a felony causing bodily injury do not fall within any of the exceptions to the express legislative intent that a defendant be sentenced "for each criminal offense committed in the course of one criminal episode or transaction." § 775.021(4)(b), Fla. Stat. (1999). The two offenses do not require "identical elements of proof"; the offenses are not "degrees of the same offense as provided by statute"; and one offense is not a lesser included offense of the other, the "elements of which are subsumed by the greater offense." § 775.021(4)(b)1.-3., Fla. Stat. (1999).
This case is unlike Gresham v. State, 725 So.2d 419, 420 (Fla. 4th DCA 1999), relied on by appellant. In Gresham, this court held that convictions for both attempted second degree murder and aggravated battery arising out of a single stabbing incident violated double jeopardy, because the aggravated battery charge did not contain an element that the other lacked. Crucial to this holding was the characterization of aggravated battery as a category 2 lesser included offense of attempted second degree murder by the standard criminal jury instructions. See id. at 420-21. A felony causing a bodily injury is not a lesser included offense of second degree murder. See Fla. Std. Jury Instr. (Crim.) [372].
Applying the Blockburger test, a comparison of the statutory elements of the two offenses at issue reveals that each contains elements not found in the other. For a felony causing bodily injury, the state must prove an enumerated felony and that during the commission of that felony, the defendant caused bodily harm to the victim. Attempted second degree murder does not require proof of any other felony or that the victim actually suffered bodily harm. Rather, the state must establish *264 that the defendant acted in a depraved manner imminently dangerous to the victim and that such act was performed without premeditated design.
For these reasons, the trial court did not err in adjudicating and sentencing Busby for both a felony causing bodily injury and attempted second degree murder.
We find no error in the trial court's preventing Busby's mother from testifying about how Busby was "treated by his father." This information was only tangentially related to the expert psychologist's opinion. The expert freely testified about what she learned about Busby's childhood when rendering her opinion as to his sanity. The expert focused on the three head injuries Busby had received, discussed his drug and alcohol use, and noted that his father suffered from schizophrenia. The trial court did not abuse its discretion in excluding Mrs. Busby's testimony.
Finally, Busby raises a constitutional challenge to his sentencing as a violent career criminal under section 775.084(1)(c), Florida Statutes (1995), on all of the convictions except dealing in stolen property and grand theft of a motor vehicle.[2] That portion of the sentencing statute was created by Chapter 95-182, Laws of Florida.
Recently, the supreme court held that Chapter 95-182 was "unconstitutional as violative of the single subject rule contained in article III, section 6 of the Florida Constitution." State v. Thompson, 750 So.2d 643 (Fla.1999).
This court and the second district have identified two different window periods for challenging Chapter 95-182 on single subject rule grounds. According to the second district, "persons who committed their criminal offenses on or after October 1, 1995, and before May 24, 1997, and were sentenced as violent career criminals for those offenses, have standing to challenge chapter 95-182 on single subject rule grounds." Thompson, 750 So.2d at 645; see Thompson v. State, 708 So.2d 315, 317 n. 1 (Fla. 2d DCA 1998). In Salters v. State, 731 So.2d 826 (Fla. 4th DCA), rev. granted, 749 So.2d 503 (Fla.1999), this court held that the window period for the single subject rule challenge closed on October 1, 1996. In Thompson, the supreme court declined to resolve this conflict on the standing issue.
Appellant committed the crimes in this case on December 13, 1996. Thus, these charges fell outside the Salters window period and appellant does not have standing to raise the single subject rule challenge. On this issue we certify conflict with the second district in Thompson.
AFFIRMED.
STONE and POLEN, JJ., concur.
NOTES
[1] Section 810.02(1), Florida Statutes (1999), contains identical language to section 810.02, Florida Statutes (Supp.1996).
[2] On the dealing in stolen property and grand theft counts, appellant was sentenced as an habitual violent offender.