886 So.2d 1013 (2004)
ENVIRONMENTAL CONFEDERATION OF SOUTHWEST FLORIDA, INC., Appellant,
v.
STATE of Florida, Department of Environmental Protection, Appellee.
Environmental Confederation of Southwest Florida, Inc. and Manasota-88, Inc., Appellants,
v.
IMC Phosphates, Inc. and State of Florida, Department of Environmental Protection, Appellees.
Nos. 1D03-0784, 1D03-1717.
District Court of Appeal of Florida, First District.
October 28, 2004.
*1015 David G. Guest and Aliki Moncrief, Tallahassee, for appellants.
Thomas M. Beason, Chief Deputy General Counsel; and Teresa L. Mussetto, Assistant General Counsel, Department of Environmental Protection, Tallahassee, for Department of Environmental Protection; Steven L. Brannock and Sarah C. Pellenbarg, of Holland & Knight LLP, Tampa; and Lawrence E. Sellers, Jr., of Holland & Knight LLP, Tallahassee, for IMC Phosphates, Inc., appellees.
WOLF, C.J.
These two consolidated cases involve timely appeals of final orders from the Department of Environmental Protection (DEP) dismissing appellants', Environmental Confederation of Southwest Florida's (ECOSWF) and Manasota-88, Inc.'s (Manasota-88), petitions for formal administrative hearing, challenging in one case the DEP's renewal of a permit to operate an underground injection well in Charlotte County, and challenging in the other case the decision of the DEP to issue a phosphate mining permit to IMC Phosphates, Inc. (IMC). The DEP dismissed both petitions on the ground that appellants could not establish standing under the requirements of revised section 403.412(5), Florida Statutes.
The issues in this case are (1) whether an amendment to section 403.412(5), Florida Statutes, relating to standing to challenge decisions of DEP, is violative of the single subject requirement found in article III, section 6 of the Florida Constitution, and (2) whether the alleged single subject violation is rendered moot by the subsequent readoption of the revised section 403.412, Florida Statutes. We hold that while the dispute was not rendered moot by the subsequent reenactment of the statute, no single subject violation occurred.

Mootness
Section 403.412(5), Florida Statutes, was amended by chapter 2002-261, Laws of Florida, effective July 2002.[1] Chapter *1016 2002-261 covers a variety of subjects relating to environmental protection, including Everglades restoration funding and modification of the Florida Land and Water Adjudicatory Commission's review authority over certain water management district rules and final orders, in addition to amending section 403.412(5), Florida Statutes.
Prior to the amendment, section 403.412 allowed any citizen to intervene as a party in an administrative proceeding by filing a verified pleading stating that the contested project or permit had or would have "the effect of impairing, polluting, or otherwise injuring the air, water, or other natural resources of the state." § 403.412(5), Florida Statutes (2000). In Manasota-88, Inc. v. Department of Environmental Regulation, 441 So.2d 1109 (Fla. 1st DCA 1983), this court held that a citizen has standing to "intervene" as described in section 403.412(5), when the department issues a notice of proposed action, not when the matter is later referred to the Division of Administrative Hearings. This construction of the term "intervene" essentially affords any citizen the right to not just intervene in ongoing proceedings, but to initiate a challenge to a proposed permit as well.
The revisions to section 403.412(5) substantially limited participation in the permitting process in two ways. Section 9 of chapter 2002-261 defines the term "intervene" to mean that a citizen may only join an ongoing proceeding (a proceeding where another party has raised a challenge to the granting or denial of a permit). It also states that a party may only initiate a proceeding upon the showing of a "substantial interest."[2]
In both cases before us, appellants filed their petitions during the "window period," that time between the effective date of the amendments and the subsequent codification in the Florida Statutes.[3] The appellants' petitions were denied.
ECOSWF and Manasota-88 argue that chapter 2002-261 violates article III, section 6 of the Florida Constitution, which requires laws to encompass only one subject and matters properly connected to that subject. Appellants assert that there is no logical connection between the subjects contained within chapter 2002-261. They also argue that the legislative history indicates that the original bill was used as a "cloak" to pass unpopular legislation.
*1017 DEP and IMC argue that appellants' single subject challenge is no longer a live controversy because the amendments to section 403.412(5) were reenacted as part of the legislature's biennial readoption of the Florida Statutes and that the reenacted statute should be retroactively applied to the time that the petition was filed, regardless of whether it was filed during a window period.
It is well-settled that a single subject violation is cured upon readoption of the Florida Statutes. See Salters v. State, 758 So.2d 667, 670 (Fla.2000). If a challenge to a permit is filed between the effective date of the amendment and the subsequent reenactment, as here, then the court must determine whether the statute in question should be applied retroactively or prospectively only. In order for a law to apply retroactively, the court must determine (1) if there is evidence that the legislature clearly intended for the law to be applied retroactively, and (2) if so, whether the retrospective application of that law is constitutionally permissible. See Pondella Hall for Hire v. Lamar, 866 So.2d 719, 722 (Fla. 5th DCA 2004). In the absence of clear legislative intent that a law apply retroactively, the general rule is that procedural statutes apply retroactively and substantive statutes apply prospectively. Id.
The legislature did not expressly state in chapter 2002-261 that the amendment was to apply retroactively. This court must, therefore, determine whether the legislatively created right to initiate an administrative proceeding is substantive or procedural.
The original enactment of section 403.412, Florida Statutes, gave citizens of the state substantive rights to challenge certain environmental permits. See Fla. Wildlife Fed'n v. State Dep't of Envtl. Regulation, 390 So.2d 64, 66 (Fla.1980). Determination of who has standing is encompassed within these substantive rights. See Caloosa Property Owners Ass'n v. Palm Beach County Bd. of County Comm'rs, 429 So.2d 1260, 1267 (Fla. 1st DCA 1983) ("Part of the process of designing a new cause of action includes delineation of who has standing.").
The changes to section 403.412(5) made by chapter 2002-261 eliminate the appellants' previous right to initiate a proceeding upon notice of DEP's intent to issue a permit. See Manasota-88, Inc., 441 So.2d at 1111 (finding petitioners could intervene and initiate further proceedings upon notice of proposed agency action which allegedly would have effect of impairing or polluting material resources of the state). Essentially a class of people no longer have a right where one existed before.
The DEP and IMC rely on Rothermel v. Florida Parole & Probation Commission, 441 So.2d 663 (Fla. 1st DCA 1983), in support of their argument that the single subject challenge is moot because the statutes should apply retroactively to the time that the petitions were filed. In that case, this court held that a statutory amendment purporting to preclude appellate review of the Parole Commission's actions concerning presumptive parole release dates would be applied retroactively so as to entitle the Parole Commission to dismiss appeals pending on the effective date of the act. This court stated that the manner of enforcing the right conferred upon the prisoners was a matter of procedure that allowed retroactive application of the act in question. However, we also specifically recognized that if the effect of retroactive application was to leave the aggrieved party without a remedy, then the principles guiding the decision, which would allow for retroactive application, would not be applicable. Id. at 665.
*1018 In the instant case, ECOSWF and Manasota-88 would be left without a remedy for challenging the issuance of permits by the DEP. The amendment limited their right to initiate an action and the scope of the available remedy. Even if appellants had an opportunity to intervene in an ongoing proceeding, they would not have the same rights as those who may initiate an action.[4] In Rothermel, the appellant had an opportunity to be heard before the Parole Commission. He still maintained the right to raise all issues, albeit in a different forum. Here, appellants' right to be heard concerning the issuance of permits by DEP was removed by the amendment to section 403.412. Thus, Rothermel is inapplicable.
DEP and IMC also argue that the appeal is rendered moot because of the decision in Environmental Confederation of Southwest Florida, Inc. v. State, 852 So.2d 349 (Fla. 1st DCA 2003), in which this court found that the appellants' request for declaratory relief had been rendered moot by the reenactment of chapter 2002-261, Laws of Florida. In that case the appellants sought a declaration that the statute was unconstitutional; however, in the instant case, the challenge concerns an active permitting decision where the statute was used at a time during which it was alleged to be unconstitutional. Thus the reenactment does not apply retroactively to moot the appeal regarding the single subject requirement.

Single Subject Requirement
Article III, section 6 of the Florida Constitution requires that laws "shall embrace but one subject and matter directly related to that subject." This single subject rule has been interpreted to mean that there be only one subject addressed in a statute and that the subject be briefly expressed in the title. See Tormey v. Moore, 824 So.2d 137 (Fla.2002). These requirements guard against the possibility that a single piece of legislation will be a "cloak" for legislation that does not have a similar subject by putting the public and other interested parties on notice of what will be included within the act. Id. at 139.
The supreme court has recently stated that "[w]hen courts are called upon to assess legislation for compliance with article III, section 6, the standard of review is highly deferential." Franklin v. State, 29 Fla. L. Weekly S538, S541 (Fla. Sept. 30, 2004). The first step in the analysis involves defining the single subject  the subject identified by the legislature in the short title. Id. at S541. The short title of chapter 2002-261, Laws of Florida, is "an act relating to environmental protection." Id. at S539.
Once the subject has been determined, the court must then determine if all provisions are "properly connected" to the single subject. In the past we have defined the test of constitutionality in terms of the challenged provisions being "necessarily incident" to the act, having a "natural or logical connection" to the act, or being at least "germane" to the subject of the act. See Fla. Dep't of Highway Safety & Motor Vehicles v. Critchfield, 842 So.2d 782 (Fla.2003). If the provisions of the act can be unified under a single "umbrella" of legislative intent, then the constitutionality of an act will be upheld. See Enterprise Leasing Co. S. Central, Inc. v. *1019 Hughes, 833 So.2d 832, 835 (Fla. 1st DCA 2002).[5]
In Enterprise, this court looked at the provisions in question and concluded that the act did not violate the single subject rule because (1) the act did not include provisions that were unrelated to the subject of the act identified in the title, and (2) the individual provisions of the act each promoted the goal of the legislation.[6]Id. at 839-840. The title of the act in Enterprise was "an act relating to civil actions," and the unexpressed goal of the act was to control perceived excesses of civil action. Id. at 835. The legislation included thirty-six sections which addressed either substantive or procedural changes in civil actions. Id. In upholding the act, we relied on State v. Lee, 356 So.2d 276 (Fla.1978), in which the court held that although the act was "broad and comprehensive," the subjects within it  tort reform and insurance  were logically related. Enterprise, 833 So.2d at 835. Also, the court examined Smith v. Department of Insurance, 507 So.2d 1080 (Fla.1987), which contained an act with seventy different sections. Enterprise, 833 So.2d at 835-836. The Smith court concluded that each section was integral to the legislature's goal of insuring the "availability of affordable liability insurance." Id. (quoting Smith, 507 So.2d at 1087).
The supreme court reviewed this prior precedent and stated the appropriate test for determining if provisions shared a natural and logical connection:
After reviewing these various methods of defining a "proper connection," we take this opportunity to set forth the correct test to be applied when determining whether a connection between a provision in the act and the act's subject is "proper" within the meaning of the single subject clause: A connection between a provision and the subject is proper (1) if the connection is natural or logical, or (2) if there is a reasonable explanation for how the provision is (a) necessary to the subject or (b) tends to make effective or promote the objects and purposes of legislation included in the subject.
In setting forth this test, we clarify that there is a difference between the subject of the act that is briefly stated in the title and the object of the act. Simply stated, "The subject is the matter to which an act relates; the object, the purpose to be accomplished." Nichols v. Yandre, 151 Fla. 87, 9 So.2d 157, 158 (1942). In this regard, we caution that the "accomplishment of several `purposes' may be logically embraced in one `subject' so long as all such purposes are germane to ... the expressed general subject." State ex rel. Crump v. Sullivan, 128 So. 478, 480 (Fla.1930).
Franklin at S542.
Applying these principles to the instant case, we find that the provisions contained within chapter 2002-261 do not violate the single subject requirement. Each provision in the act is logically related *1020 to environmental protection and is specifically related to Everglades restoration.
Chapter 2002-261 contains provisions that provide funding for Everglades cleanup, create exemptions for certain types of environmental permitting, change the Florida Land and Water Adjudicatory Commission's scope of review of final orders and rules of water management districts' actions, and, under some circumstances, change the scope of review of DEP orders. Each provision in the act is germane to the overall purpose stated in the act. All of these provisions relate to the protection of the environment and to the policies and practices of the DEP.
The act also promotes the clear purpose of the legislation. While, as in Enterprise, the purpose of the act is not expressly stated, the purpose of the legislation in this case is ascertainable when one reviews the language of the act itself. See Hernandez-Molina, 860 So.2d at 489 (determining purpose of the act was to increase penalties on certain crimes and certain offenders for the protection of the public even though this purpose was not specifically stated). The legislature had a general goal of restoration of the Everglades and addressed the methods to be used in executing the Everglades restoration project. The restoration will not only require a statutorily-created scheme to raise funding, but will also likely generate a significant number of required permits to accomplish its purpose. It is logical for the legislature to amend the standing requirements defining who may initiate a proceeding when it foresees a possibility for large amounts of litigation concerning the permits. Moreover, the act does not fail the single subject test simply because the permitting restrictions are applicable to the whole state and the Everglades restoration project is obviously limited to only a portion of the state. The goal of executing the Everglades restoration project is tied to the overall subject of environmental protection, and the provisions of the act reflect that subject as well as promote the stated purpose.
Appellants also argue that the scope of the title is too broad, and they rely on this court's decision in State v. Leavins, 599 So.2d 1326 (Fla. 1st DCA 1992). In that case, we held unconstitutional a statutory amendment that was titled "an act relating to environmental resources," reasoning that the title of the act was "so broad, and potentially encompasse[d] so many topics, as to lend little support to the state's attempt to fend off a single subject challenge." Id. at 1334. That act, however, contained extremely different provisions ranging from a prohibition on gas and oil exploration in South Florida, to a modification of the fee for bear and turkey hunting stamps, to an establishment of a 50 cent surcharge on oyster wholesalers. Leavins stands for the proposition that the legislature cannot utilize an overly broad title in order to enact provisions with no logical or natural connection. Here, as previously discussed, the provisions in chapter 2002-261 are reasonably related to the title of the act and have a natural and logical connection to each other as well as to the overall purpose of the legislation.
Finally, appellants urge us to look at legislative history to support their argument that the bill in the instant case violated the single subject rule. They note that here, as in State v. Thompson, 750 So.2d 643 (Fla.1999), the section of the bill that is being questioned was added to the Everglades funding bill in the final hours of the session, precisely when violations of the single subject rule are likely to occur. The doctrine of separation of powers as well as mutual respect for an equal branch of government require this court to read the language in Critchfield and Thompson as *1021 standing for the proposition that legislative history may provide some support for determining that an act that is questionable on its face may be unconstitutional. Such legislative history, however, is not an independent reason for determining that a violation of the single subject rule has occurred. The recent supreme court opinion in Franklin supports this view.
[I]f, after examining the act in its entirety, we cannot discern a "reasonable explanation" for the inclusion of a seemingly disparate provision, we will look to the history of the legislative process to determine how the challenged provision was added to the act. In other words, this Court has looked to the legislative history of the enactment to buttress our conclusion that the provision is not properly connected.
Franklin at S543.
Thus, as our supreme court has wisely stated in the past, it is the court's job to review the final product of the legislature rather than its internal operating procedures. See, e.g., Fla. Senate v. Fla. Public Employees Council 79, AFSCME, 784 So.2d 404, 408 (Fla.2001); Moffitt v. Willis, 459 So.2d 1018 (Fla.1984). In Moffitt the court specifically recognized the deference each branch must give one another in conducting its own operation under the concept of separation of powers:
Just as the legislature may not invade our province of procedural rulemaking for the court system, we may not invade the legislature's province of internal procedure rulemaking.
Moffitt, 459 So.2d at 1022.
We must, therefore, be careful not to intrude on the legislative process. Just as the court system properly resists actions of the legislature which will interfere with the ability of the courts to operate, we must show the same deference to the legislature. See, e.g., Jackson v. Dep't of Corrs., 790 So.2d 381 (Fla.2000). Historically, many bills are amended near the end of the session. This is how the legislature chooses to operate. Unless such an amendment results in the facial constitutional invalidity of a bill (such as a single subject violation) or is done in direct contravention of the constitution, we should refrain from interfering with the workings of the legislature. In the instant case, the legislation is valid on its face, and the title of the bill is sufficiently broad to encompass the subject matter of the bill. There are no allegations that the procedures utilized by the legislature directly controverted the constitution. The issues of when and how the bill was amended are within the province of the legislature.
Because we find no single subject violation, the decisions of the DEP are affirmed.
KAHN and LEWIS, JJ., Concur.
NOTES
[1] Chapter 2002-261 made the following changes to section 403.412(5), Florida Statutes:

(5) In any administrative, licensing, or other proceedings authorized by law for the protection of the air, water, or other natural resources of the state from pollution, impairment, or destruction, the Department of Legal Affairs, a political subdivision or municipality of the state, or a citizen of the state shall have standing to intervene as a party on the filing of a verified pleading asserting that the activity, conduct, or product to be licensed or permitted has or will have the effect of impairing, polluting, or otherwise injuring the air, water, or other natural resources of the state. As used in this section and as it relates to citizens, the term "intervene" means to join an ongoing s. 120.569 or s. 120.57 proceeding; this section does not authorize a citizen to institute, initiate, petition for, or request a proceeding under s. 120.569 or s. 120.57. Nothing herein limits or prohibits a citizen whose substantial interests will be determined or affected if the party demonstrates it may suffer an injury in fact which is of sufficient immediacy and is of the type and nature intended to be protected by this chapter. No demonstration of special injury different in kind from the general public at large is required. A sufficient demonstration of a substantial interest may be made by a petitioner who establishes that the proposed activity, conduct, or product to be licensed or permitted affects the petitioner's use or enjoyment of air, water, or natural resources protected by this chapter.
(6) Any Florida corporation not for profit which has at least 25 current members residing within the county where the activity is proposed, and which was formed for the purpose of the protection of the environment, fish and wildlife resources, and protection of air and water quality, may initiate a hearing pursuant to s. 120.569 or s. 120.57, provided that the Florida corporation not for profit was formed at least 1 year prior to the date of the filing of the application for a permit, license, or authorization that is the subject of the notice of proposed agency action.
(7) In a matter pertaining to a federally delegated or approved program, a citizen of the state may initiate an administrative proceeding under this subsection if the citizen meets standing requirements for judicial review of a case or controversy pursuant to Article III of the United States Constitution.
(New language is underlined.)
[2] The act also extends automatic standing to initiate proceedings to Florida's non-profit environmental protection corporations that have at least 25 members residing in the county where the proposed activity is to take place. Corporations falling in this category are not required to show a substantial interest. In both of the cases before us, the appellants did not qualify for automatic standing, and claimed standing under the old standards of section 403.412(5).
[3] Under appellants' argument, petitions filed during the period between the date the amendment became effective and the date the amendment was subsequently reenacted would not be rendered moot by the proposition that single subject violations are cured at the time the amendment is reenacted.
[4] The rights of intervenors in an administrative proceeding are subordinate to the propriety of the main proceeding. See Humana of Fla., Inc. v. Dep't of Health & Rehab. Servs., 500 So.2d 186, 188 (Fla. 1st DCA 1986). Appellants would not likely be able to raise any new issues in a proceeding already pending.
[5] In applying these principles we are to apply a highly deferential standard of review with a presumption in favor of validity. See Hernandez-Molina v. State, 860 So.2d 483 (Fla. 4th DCA 2003) (citing to State ex rel. Flink v. Canova, 94 So.2d 181, 184-185 (Fla.1957)).
[6] While State v. Thompson, 750 So.2d 643 (Fla.1999), stated that it would give greater deference where the legislature specifically identified a goal or object, the failure to expressly state a goal will not necessarily result in the legislation being violative of the single subject rule. See, for example, Enterprise which held that where a specific goal of act was identified but not expressed, the court could look at legislation and determine the unexpressed goal.