887 So.2d 1063 (2004)
Corey FRANKLIN, Petitioner,
v.
STATE of Florida, Respondent.
No. SC03-413.
Supreme Court of Florida.
September 30, 2004.
Rehearing Denied November 19, 2004.
*1066 Bennett H. Brummer, Public Defender, and Lisa Walsh and Billie Jan Goldstein, Assistant Public Defenders, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, and Mary G. Jolley and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, FL, for Respondent.
PARIENTE, C.J.
The issue in this case is the constitutionality of chapter 99-188, Laws of Florida (the "Act"), designated by the Legislature *1067 as the "Three-Strike Violent Felony Offender Act." The specific constitutional question presented is whether the fourteen provisions of the Act "embrace but one subject and matter properly connected therewith" as mandated by article III, section 6 of the Florida Constitution, the single subject clause.[1] We have jurisdiction based on certified conflict among the district courts of appeal.[2] For the reasons expressed in this opinion, we conclude that the Act does not violate the single subject clause of the Florida Constitution.

I. SUMMARY OF CHAPTER 99-188
Chapter 99-188, enacted during the 1999 legislative session, became effective July 1, 1999. Chapter 99-188 is identified at the beginning of its full title as "an act relating to sentencing." The remainder of the full title sets forth the statutory provisions that are enacted or amended in the Act.[3] A lengthy preamble, consisting of twenty-one "Whereas" clauses, follows the full title.[4] The Act contains fourteen separate sections, twelve of which are substantive. Section one sets forth the citation name of the Act as the "Three-Strike Violent Felony Offender Act"[5] and section fourteen provides an effective date of July 1, 1999. The remaining twelve sections, which are set forth in forty-one pages, may be summarized as follows:
Section 2: expands the definition of "prison release reoffender" in section 775.082, a sentencing statute.
Section 3: amends section 775.084 to redefine "habitual felony offender," to define "three-time felony offender," and to require the imposition of mandatory minimum sentences on persons fitting the definition of "three-time felony offender."
Section 4: amends section 784.07 to provide mandatory minimum sentences for aggravated assault of a law enforcement officer and aggravated battery of a law enforcement officer.
Section 5: amends section 784.08 to provide a mandatory minimum sentence for aggravated assault on a person 65 years or older and for aggravated battery on a person 65 years or older.
Section 6: amends references to section 775.084 found in section 790.235, in conformity with section 3.
Section 7: creates section 794.0115, which defines "repeat sexual batterer," provides procedures for determining repeat sexual batterer status, and creates a mandatory minimum sentence for persons who qualify.
Section 8: amends section 794.011, wherein the crime "sexual battery" is defined, to refer to new section 794.0115 in punishment provisions.
Section 9: amends section 893.135, which criminalizes trafficking in certain drugs, to expand the definitions of certain trafficking offenses and provide a minimum mandatory sentence for certain trafficking offenses.
Section 10: amends various statutes to incorporate references to section 893.135, as amended by section 9.

*1068 Section 11: amends section 943.0535 to require clerks of court to transmit to the appropriate United States immigration officer records pertaining to aliens who are convicted or who enter a plea to any crime.
Section 12: requires the Governor to publicize the penalties contained in the Act.
Section 13: amends section 810.011 to expand the definition of "conveyance," as used to define burglary, to include a "railroad vehicle," the statute previously referencing only a "railroad car."
Thus, only two of the Act's twelve substantive sections relate specifically to the "Three-Strike" violent felony provisions: section 3, which amends section 775.084 to define "three-time felony offender" and provide mandatory minimum terms for persons meeting the criteria, and section 6, which amends references to section 775.084 found in section 790.235 to conform to section 3. However, three of the other sections, sections 2, 4, and 5, establish harsher sentences for violent and repeat offenders.
Four of the remaining sections involve substantive criminal offenses. Section 7 creates the new offense of "repeat sexual batterer" and establishes a mandatory minimum sentence for offenders meeting the criteria for that crime. Section 8 adds references to the new statute defining "repeat sexual batterer" to the sexual battery statute, section 794.011, wherein "sexual battery" is defined. Section 9 modifies the drug trafficking statute to allow prosecution on the basis of the number of cannabis plants that a person possesses, sells, or delivers, and modifies the weight benchmarks for prosecution. Section 9 also establishes minimum mandatory sentences for drug offenses corresponding to a certain quantity.[6] Section 13 amends the definition of conveyance in the burglary statute to include a railroad vehicle.
Finally, the Act contains two administrative provisions. Section 11 requires the clerk of the court to transmit to the appropriate United States immigration officer records pertaining to aliens who are convicted of or who enter a plea to any crime. Section 12 requires the Governor to publish the penalties contained in the Act.

II. FACTS AND PROCEDURAL BACKGROUND
Franklin was convicted of armed robbery and resisting arrest based on acts that occurred after the effective date of chapter 99-188. He received a sentence of forty years in prison as a habitual felony offender, pursuant to section 775.084, Florida Statutes (1999), which had been amended by section 3 of the Act. Franklin's prior criminal history consisted of one felony conviction (possession of cocaine) and one felony for which adjudication of guilt was withheld (burglary of a dwelling). Prior to the Act's amendment to section 775.084, an offense for which adjudication of guilt had been withheld would not have qualified as a predicate for habitual offender sentencing unless the subsequent offenses pending for sentencing was committed while the offender was on probation or community control after the withhold of adjudication. See § 775.084(1)(a)(2)(b), Fla. Stat. (Supp.1998).
Franklin appealed. While his appeal was pending, the Second District held in Taylor v. State, 818 So.2d 544 (Fla. 2d DCA 2002), that the Act violated the single subject requirement of article III, section 6. Relying on Taylor, Franklin filed a motion to correct illegal sentence pursuant to *1069 Florida Rule of Criminal Procedure 3.800(b). The trial court granted the motion and the State appealed to the Third District. In State v. Franklin, 836 So.2d 1112 (Fla. 3d DCA 2003), the Third District held that the Act did not violate the constitutional requirement of a single subject. The Third District also certified conflict with Taylor on whether the Act violates the single subject requirement.

III. DISTRICT COURT DECISIONS
We begin with a review of the different approaches employed by the district courts of appeal that have addressed the single subject challenge to chapter 99-188. In Taylor, the Second District began its analysis by identifying the topics to which the various provisions relate. See 818 So.2d at 546. In attempting to discern the single subject, the Taylor court noted that the Act's lengthy preamble "evinces the legislators' concern with the crime rate in Florida and the fact that felons, particularly violent and repeat offenders, are not being sentenced to the maximum terms allowed under Florida law." Id. at 547-48. The Second District observed that most of the sections of the Act address sentencing and impose minimum mandatory terms. See id. at 548. According to the district court, of the sections that do not address sentencing, one creates an offense involving repeat crimes of violence punishable by a mandatory minimum term, and four merely implement changes made in other provisions of the Act. See id. at 549. The Second District then determined that all of the sections but two address a "single subject because they are naturally and logically related to each other and to the legislatively stated purpose of the act." Id.
The Second District concluded that section 13, which amended the substantive definition of conveyance in the burglary statute to include a "railroad vehicle," is not a sentencing provision, and does not concern violent or repeat offenders. According to the Second District,
[t]his slight expansion of a substantive criminal offense has only an attenuated relationship to sentencing or to the other sections of the act, in that it might be argued that under the broader definition of a conveyance more felons could be convicted of "armed burglary," one of the qualifying crimes for three-strikes sentencing. But that relationship is so tenuous, so dependent on the happenstance of individual cases, that it simply cannot be characterized as natural or logical.
Id. at 549 (citation omitted).
The Second District further concluded that section 11, which concerns a purely administrative subject, bears even less relationship than section 13 to the Act's other provisions and that it impermissibly combines civil and criminal subjects in violation of the single subject rule. Thus, the court ruled the entire Act unconstitutional. See id. at 549-50.[7]
Directly contrary to Taylor, the Third District, sitting en banc, held in Franklin that there was no single subject violation. See Franklin, 836 So.2d at 1114.[8] Rather *1070 than specifically define the single subject, the Third District focused on the purpose of the Act. Noting that the statute is designed to "protect the public from repeat and serious violent felony offenders," the Third District determined that section 11 is "reasonably related" to the Act's purpose because it ensures the removal of felons from the country after they have served their sentences. 836 So.2d at 1113-14. The Third District stated that, "although less obviously" than section 11, section 13 is related to the Act's purpose because it expands on the definition of the crime of armed burglary, one of the offenses included in the Habitual Felony Offender Act. Id. at 1114.
In dissent, Judge Cope asserted that the single subject analysis should and could be very straightforward.[9] According to Judge Cope,
[t]he key to the single subject analysis is that the Legislature must state the single subject in the title. It is the Legislature's responsibility to say what the single subject is. Where a single subject challenge is raised, the judiciary's sole role is to find the legislatively-stated single subject and determine whether it covers the contents of the act.
Id. at 1116 (Cope, J., dissenting). Addressing what he termed "widespread confusion" over how to identify an act's title and where to find the legislative statement of the single subject, Judge Cope stated that he would limit the inquiry to the words following the phrase, "an act relating to," found at the beginning of every title. See id. at 1117. Under this view, the single subject of chapter 99-188 would be sentencing. See id. at 1119. Judge Cope concluded that section 11 is properly connected to sentencing in that it requires the court clerk to provide the charging document, judgment, and sentence of every alien offender to the INS after sentence has been imposed. See id. at 1120. However, similar to the Second District in Taylor, Judge Cope concluded that section 13 is not related to sentencing because the section changes the substantive criminal law. See id. Thus, Judge Cope would have invalidated the Act in its entirety because of the single subject violation. See id.
Most recently, the Fourth District in Hernandez-Molina v. State, 860 So.2d 483 (Fla. 4th DCA 2003), reached the same conclusion as the Franklin majority in holding that the Act does not violate article III, section 6. The Fourth District concluded that the subject of the Act was sentencing, and its purpose was protection of the public through increased punishments. See id. at 489. Applying this test, the Fourth District determined that section 11 was related to "both the subject and purpose of the Act" because removing alien offenders from the country at the end of their sentences promoted the legislation's purpose of protecting the public. Id. at 489.
Regarding section 13, the Fourth District observed that the provision "was proposed so that a serious crime against a person, a railroad conductor, would be punished accordingly. Thus, the statute clearly provides for an increased sentence for a person committing a serious crime. As such, it relates both to the subject and purpose of the entire act." Id. at 490.[10] *1071 The Fourth District also found it significant that all of the provisions of the Act concern criminal law and there is no evidence of logrolling in this instance. See 860 So.2d at 490. According to the district court, it had a duty to apply the "single subject provision to avoid a `construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted.'" Id. (quoting State ex rel. Flink v. Canova, 94 So.2d 181, 184 (Fla.1957)).
In a concurring in part and dissenting in part opinion, Judge Hazouri, joined by three other judges, dissented from the majority decision on the single subject issue. In his view, the single subject violation was more pervasive than the violation identified by the Second District in Taylor. See id. at 491 (Hazouri, J., dissenting). According to the dissent, single subject analysis involves more than an examination of the phrase "an act relating to." See id. The dissent noted that although the first line of the title suggested that the subject of the bill was sentencing in general, the nearly four-page title went on to significantly restrict the subject. See id. at 491.[11] Further, relying on the twenty-one "WHEREAS" clauses in the preamble and the purpose declared in the Act's citation name, the "Three-Strike Violent Felony Offender Act," the dissent found the subject of the Act to be "matters related to enhanced sentencing for repeat violent felony offenders." Id. The dissent concluded, similar to the Second District in Taylor, that sections 11 and 13 failed to "naturally and logically relate" to the single subject. See id. at 492. The dissent further determined that section 9, which changes the quantities of drugs used in classifying trafficking offenses and provides mandatory minimum sentences for certain drug trafficking offenses, also violates the single subject clause because it does not naturally or logically relate to the subject of sentencing of violent felony offenders. See id.
As the cases from the district courts illustrate, the methods for determining both the single subject of an act and those matters that are properly connected to that subject vary.[12] We take this opportunity to review our jurisprudence in this area of the law and clarify the single subject analysis.

IV. SINGLE SUBJECT RULE ANALYSIS

A. Applicable Law

1. The Purpose of the Single Subject Clause
Currently, forty-three states have some form of single subject clause applicable to legislation contained in their state constitutions.[13] *1072 In Florida, the single subject clause has been part of our state constitution since 1868, see Canova, 94 So.2d at 182, and is presently set forth in article III, section 6. This provision mandates:
Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title.
Art. III, § 6, Fla. Const.
Thus, the single subject clause contains three requirements. First, each law shall "embrace" only "one subject." Second, the law may include any matter that is "properly connected" with the subject. The third requirement, related to the first, is that the subject shall be "briefly expressed in the title." In State v. Thompson, 750 So.2d 643, 646 (Fla.1999), this Court reaffirmed the purposes of the single subject provision:
(1) to prevent hodgepodge or "log rolling" legislation, i.e. putting two unrelated matters in one act; (2) to prevent surprise or fraud by means of provisions in bills of which the title gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and (3) to fairly apprise the people of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon.
Id. (quoting Canova, 94 So.2d at 184).
In Colonial Investment Co. v. Nolan, 100 Fla. 1349, 131 So. 178 (1930), this Court explained the historical backdrop for the constitutional mandate:
It had become quite common for legislative bodies to embrace in the same bill incongruous matters having no relation to each other, or to the subject specified in the title, by which means measures were often adopted without attracting attention. And frequently such distinct subjects, affecting diverse interests, were combined in order to unite members who favored either in support of all. And the failure to indicate in the title the object of the bill often resulted in members voting ignorantly for measures which they would not knowingly have approved. And not only were the members thus misled, but the public also; and legislative provisions were sometimes pushed through which would have been made odious by popular discussion and remonstrance if their pendency had been seasonably demonstrated by the title of the bill.
Id. at 179. In fact, as we observed in State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. 929 (1905),
[n]early all the states having Constitutions of recent adoption have incorporated therein provisions in nearly identical language, and their courts agree as to the purpose of such provisions. They also agree that the provision refers to the subject-matter of the legislation, and not to a single purpose or end sought to be accomplished. Its purpose was to avoid the confusion incident to the evil which had grown out of `omnibus' legislation.
Id. at 961 (quoting Gibson v. State, 16 Fla. 291, 299 (1877)).
*1073 Extant in our constitution since 1868, the single subject clause is a direct expression of the people's intent to provide a limitation on the Legislature's power to enact laws. The judiciary's obligation is to apply the constitutional limitation to legislation that violates the constitution. See generally Sebring Airport Authority v. McIntyre, 783 So.2d 238, 244 n. 5 (Fla.2001) ("To the judges belongs the power of expounding the laws; and although in the discharge of that duty they may render a law inoperative by declaring it unconstitutional, it does not arise from any supremacy which the judiciary possesses over the Legislature, but from the supremacy of the Constitution over both.") (quoting State ex rel. Bisbee v. Drew, 17 Fla. 67, 84 (1879)); Amos v. Mathews, 99 Fla. 1, 126 So. 308, 315 (1930) ("To the extent ... that ... an act violates express or clearly implied mandates of the Constitution, the act must fall, not merely because the court so decrees, but because of the dominant force of the Constitution, an authority superior to both Legislature and judiciary. Such an act never becomes a law.").

2. Standard of Review
When courts are called upon to assess legislation for compliance with article III, section 6, the standard of review is highly deferential. "[T]he general disposition of the courts [is] to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted." Canova, 94 So.2d at 184. We stated:
Should any doubt exist that an act is in violation of art. III, sec. 16 [[14]] of the Constitution, or of any constitutional provision, the presumption is in favor of constitutionality. To overcome the presumption, the invalidity must appear beyond reasonable doubt, for it must be assumed the legislature intended to enact a valid law. Therefore, the act must be construed, if fairly possible, as to avoid unconstitutionality and to remove grave doubts on that score.
Id. at 184-85. This standard of review has been applied to single subject challenges since our earliest cases addressing this issue. See Bunnell v. State, 453 So.2d 808, 809 (Fla.1984) (stating in review of single subject challenge that "legislative acts are presumed to be constitutional and that courts should resolve every reasonable doubt in favor of constitutionality"); State ex rel. Shevin v. Metz Constr. Co., 285 So.2d 598, 600 (Fla.1973) ("With respect to the sufficiency of the title to an Act, all the usual presumptions of validity apply, and we must assume that the Legislature intended to enact a valid law."); Colonial Inv. Co., 131 So. at 178 (stating that to overcome the presumption in favor of constitutionality, the single subject violation must occur beyond a reasonable doubt); Ex parte Knight, 52 Fla. 144, 41 So. 786, 788 (1906) (when analyzing single subject challenges "every fair intendment and reasonable doubt should be yielded in favor of the validity of the legislative enactments"); Holton v. State, 28 Fla. 303, 9 So. 716, 717 (1891) (stating in context of single subject analysis that "the courts... should always apply a liberal rule, and refuse to declare [the legislature's] action void, except in clear cases that are free from every reasonable doubt").

3. Defining the Single Subject
The key to determining whether a legislative enactment violates the single subject *1074 clause of the Florida Constitution is the method by which the court defines the "single subject" of the legislation and the analysis employed to determine matters "properly connected therewith." An analysis of our prior case law reveals that, while maintaining fidelity to the mandate of our citizens expressed in our constitution, we have given considerable deference to the Legislature to determine the single subject.[15]
In determining the single subject, we start with the basic principle that "the subject is the one that is expressed in the title of the act." Knight, 41 So. at 788; see also Colonial Inv. Co., 131 So. at 178. Indeed, the constitutional provision requires that the subject be briefly expressed in the title.
For purposes of single subject analysis, every law published in the Laws of Florida has both a short title, i.e. "An act relating to ...," and a full title, which begins with the chapter law number and ends with "providing an effective date," and encompasses the short title. Cf. State v. Kaufman, 430 So.2d 904, 907 (Fla.1983). "[F]ormerly the title of an act was not considered a part of it and, anciently, acts had no title prefixed at all but ... titles [have] come to possess very great importance by reason of" the single subject clause contained in the constitution. Canova, 94 So.2d at 183-84.[16] Consistent with our earliest jurisprudence and the actual wording of our constitution, we reiterate that a court generally need look no further than the title of the act in question when defining the single subject.
Over the years, full titles have varied in length, some being relatively brief[17] and others spanning pages, such as the full title at issue in this case. Although article III, section 6 imposes the restriction that the subject be "briefly expressed in the title," we have remained deferential to the Legislature's choice to craft a title to an act with few words or many. Indeed, we noted as early as 1905 that although a lengthy full title may be "unduly drawn out ..., cumbersome, and awkwardly worded," its length alone will not invalidate an act under the single subject clause. *1075 Bryan, 39 So. at 962 ("[A]mplification of the title to an act ... does not vitiate such title or subject it to the criticism of having dealt with two distinct or incongruous subjects.").[18] As noted above, in recent years full titles have consistently begun with the phrase "an act relating to" and ended with "providing an effective date."
This Court has adhered to the presumption that an act complies with article III, section 6, even when the full title of an act is lengthy. When a single subject could not be easily determined and when doubts arose as to whether the various provisions were connected to the subject, this Court has consistently analyzed the act with every reasonable doubt in favor of validity. As the majority and dissenting opinions in Taylor, Franklin, and Hernandez-Molina illustrate, courts have relied on various sources individually or in combination when defining the single subject, including the general subject expressed in the short title, i.e., "an act relating to ...,"[19] the citation name for the act,[20] the full title,[21] and the act's preamble.[22]
We resolve the uncertainty as to the source of the single subject by relying on the precise language of the constitution itself, which mandates that the single subject be "briefly expressed in the title." Although the full title may be as lengthy as the Legislature chooses, the actual expression of the single subject within the full title must be briefly stated. Therefore, we adopt that portion of Judge Cope's dissent in Franklin in which he concluded that the single subject of an act is derived from the short title, i.e., the language immediately following the customary phrase "an act relating to" and preceding the indexing of the act's provisions. In so doing, we specifically note that although many acts may contain a citation name by which either the entire act or portions of it may be identified, the citation name is not synonymous with the single subject.[23]
*1076 This relatively simple method for defining the one subject of an act is supported by our precedent. Indeed, we have consistently stated that only the subject, not matters connected to the subject, must be expressed in the title. See, e.g., City of Hialeah v. State ex rel. Ben Hur Life Ass'n, 128 Fla. 46, 174 So. 843, 846 (1937), and cases cited therein; see also City of Pensacola v. Shevin, 396 So.2d 179, 180 (Fla.1981) ("In order to comply with the requirement that the subject of a law be briefly expressed in the title, the title need not be an index of all the features of the legislation."). In other words, it is not constitutionally necessary to index the provisions contained in the body of the act in the title. See State ex rel. Lichtenstein v. Coleman, 133 Fla. 717, 183 So. 163, 164 (1938).
Although not constitutionally required, indexing the provisions of the act in the title does tend to further one of the purposes of the single subject provision  notice to the public and the Legislature. As stated in Canova,
there seems to have been some concern in our courts to prevent the evil of matters being inserted in a body of an act whose title does not properly put the people on notice of such content. The evil of "log rolling" is of course lesser, in that it is easier to detect, for the title is notice, per se, of the evil involved.
94 So.2d at 184. However, the full title nonetheless must be "so worded as not to mislead a person of average intelligence as to the scope of the enactment and [be] sufficient to put that person on notice and cause him to inquire into the body of the statute itself." Loxahatchee River Envtl. Control Dist. v. Sch. Bd. of Palm Beach County, 515 So.2d 217, 219 (Fla.1987) (quoting Williams v. State, 370 So.2d 1143, 1144 (Fla.1979)).
Our determination that the single subject of an act can be found in the short title is subject to the following caveat: the title of an act may be general, "so long as it is not made a cover to legislation incongruous in itself." State ex rel. Attorney General v. Green, 36 Fla. 154, 18 So. 334, 338 (1895). In other words, the short title of the legislation cannot be so broad as to purportedly cover unrelated topics, and thus provide no real guidance as to what the body of the act contains. Indeed, allowing an overly broad short title to become the single subject runs the risk of permitting logrolling and hodgepodge or omnibus legislation.
An example of an overly broad short title can be found in State v. Thompson, 750 So.2d 643 (Fla.1999). In that case, the short title of the act was, "An act relating to [the] justice system." Id. at 648. The State argued that the reference to the "justice system" in the title encompassed provisions that addressed both career criminals and domestic violence. See id. Because the short title was so broad as to encompass the entire justice system, this Court looked beyond the short title to determine whether the act encompassed a single subject that was briefly stated in the title. We noted that the act was originally titled more narrowly as "an act relating to career criminals" before it was changed to refer to the "justice system" when the domestic violence provisions were added shortly before the bill passed. See id. Noting that nothing in the career criminal provisions addressed any facet of domestic violence, we determined that it was "clear" that the "various sections of [the chapter law] ... address two different subjects: career criminals and domestic violence." Id. at 648. Therefore, we hold here, as we did in Thompson, that if the Legislature's short title is suspect for being overly broad, a court should look to the remainder *1077 of the act and the history of the legislative process to determine if the act actually contains a single subject or violates the constitution by encompassing more than one subject.
Ordinarily, determining the single subject of an act by reference to the short title will be a straightforward process. The more difficult analysis is whether the various provisions are "properly connected" to the single subject. We now turn to the analysis to be used when evaluating the "properly connected" question.

4. Properly Connected
As stated above, the second requirement of the single subject clause in article III, section 6 mandates that all provisions in the body of the act be "properly connected" to the single subject. The use of the phrase "properly connected" in article III, section 6 is broader than the phrase "directly connected" required by article XI, section 3 of the Florida Constitution, which authorizes changes in our constitution by citizen initiative petition.[24] In Fine v. Firestone, 448 So.2d 984 (Fla.1984), we explained the distinction:
We find it is proper to distinguish between the two. First, we find that the language "shall embrace but one subject and matter properly connected therewith" in article III, section 6, regarding statutory change by the legislature is broader than the language "shall embrace but one subject and matter directly connected therewith," in article XI, section 3, regarding constitutional change by initiative. Second, we find that we should take a broader view of the legislative provision be cause any proposed law must proceed through legislative debate and public hearing. Such a process allows change in the content of any law before its adoption. This process is, in itself, a restriction on the drafting of a proposal which is not applicable to the scheme for constitutional revision or amendment by initiative. Third, and most important, we find that we should require strict compliance with the single-subject rule in the initiative process for constitutional change because our constitution is the basic document that controls our governmental functions, including the adoption of any laws by the legislature.
Id. at 988-89 (alterations in original) (third emphasis supplied).
A review of our jurisprudence reveals that we have defined a "proper" connection in various ways. We have described a proper connection as one that is "natural or logical." See, e.g., Florida Dep't of Highway Safety & Motor Vehicles v. Critchfield, 842 So.2d 782, 785 (Fla.2003) ("[M]atters included in the act [must] have a natural or logical connection."); Grant v. State, 770 So.2d 655, 657 (Fla.2000) ("Pursuant to [the single subject] requirement, there must be a logical or natural connection between the various portions of a legislative enactment."). We have stated that whether a connection is proper will depend on "common sense." Smith v. Dep't of Ins., 507 So.2d 1080, 1087 (Fla.1987). We have also stated that if the provision is "necessary" to the subject, "fairly and naturally germane" to the subject, or promotes the purposes of the legislation as set forth in the subject, the provision may be regarded as properly connected. As we *1078 explained in surveying the law to date as of 1957,
if a matter is germane to or reasonably connected with the expressed title of the act, it may be incorporated within the act without being in violation of [the single subject provision] of our constitution. Provisions which are necessary incidents to, or tend to make effective or promote the object and purpose of the legislation included in the subject expressed in the title of the act may be regarded as matters properly connected with the subject thereof.... In determining if matters are properly connected with the subject, the test is whether such provisions are fairly and naturally germane to the subject of the act, or are such as are necessary incidents to or tend to make effective or promote the objects and purposes of legislation included in the subject.
Canova, 94 So.2d at 184 (citations omitted).
More recently, we explained that a connection between the subject and the provision is proper if a "reasonable explanation" exists as to why the Legislature chose to join the provision to the legislative act. Grant, 770 So.2d at 657 (citing State v. Johnson, 616 So.2d 1, 4 (Fla.1993)). After reviewing these various methods of defining a "proper connection," we take this opportunity to set forth the correct test to be applied when determining whether a connection between a provision in the act and the act's subject is "proper" within the meaning of the single subject clause: A connection between a provision and the subject is proper (1) if the connection is natural or logical, or (2) if there is a reasonable explanation for how the provision is (a) necessary to the subject or (b) tends to make effective or promote the objects and purposes of legislation included in the subject.
In setting forth this test, we clarify that there is a difference between the subject of the act that is briefly stated in the title and the object of the act. Simply stated, "The subject is the matter to which an act relates; the object, the purpose to be accomplished." Nichols v. Yandre, 151 Fla. 87, 9 So.2d 157, 158 (1942). In this regard, we caution that the "accomplishment of several `purposes' may be logically embraced in one `subject' so long as all such purposes are germane to ... the expressed general subject." State ex rel. Crump v. Sullivan, 99 Fla. 1070, 128 So. 478, 480 (1930); see also North Ridge General Hosp., Inc. v. City of Oakland Park, 374 So.2d 461, 463-64 (Fla.1979) ("The term `subject' is broader than the word `object,' as one subject may contain many objects."). The purposes of an act may be instructive in determining whether there is a reasonable explanation for the inclusion of a specific provision in the chapter law. However, the purposes of an act cannot be used to either define or expand the single subject. The single subject clause contained in article III, section 6 "refers to the subject-matter of the legislation, and not to a single purpose or end sought to be accomplished." Gibson v. State, 16 Fla. 291, 299 (1877).
A review of the body of our jurisprudence addressing single subject leads us to conclude that in determining whether a reasonable explanation exists for the connection between a specific provision and the single subject, the court may consider the citation name, the full title, the preamble, and the provisions in the body of the act. See generally Thompson, 750 So.2d at 643 (looking to body of act to determine whether substantive provisions dealing with domestic violence were properly connected to single subject of career criminals); Burch v. State, 558 So.2d 1, 2 (Fla.1990) (examining preamble *1079 to determine if provisions were properly connected to a single subject); Smith, 507 So.2d at 1086 (noting that the Legislature explained in the preamble of the act how tort reform provisions and the insurance regulatory provisions were "properly connected" to the subject); Colonial Inv. Co., 131 So. at 178 (noting that even after looking to the body of the act, any connection between a provision and the subject was too tenuous to be sustained); Green, 18 So. at 337 (examining "entire act" to determine if provisions were properly connected to subject). However, if, after examining the act in its entirety, we cannot discern a "reasonable explanation" for the inclusion of a seemingly disparate provision, we will look to the history of the legislative process to determine how the challenged provision was added to the act. In other words, this Court has looked to the legislative history of the enactment to buttress our conclusion that the provision is not properly connected. For example, in Thompson, we noted that the offending domestic violence provisions were added to the bill near the end of the regular session after the provisions had failed to pass on their own. See 750 So.2d at 648. We stated that "[i]t is in circumstances such as these that problems with the single subject rule are most likely to occur." Id.; see also Heggs v. State, 759 So.2d 620, 627 (Fla.2000) (chapter law which contained disparate provisions added near the end of the sessions constituted a "classic act of logrolling").
This Court has also concluded that particular combinations of various statutory provisions may not be properly connected. To date, this Court has regarded two such combinations with caution: substantive changes to the criminal law that are contained in acts that do not predominately address the substantive criminal law,[25] and chapter laws that combine civil and criminal provisions.[26] However, other improperly combined provisions may run afoul of the single subject clause as well. For example, we recently found that a provision concerning the assignment of bad check debts to a private debt collector had "no natural or logical connection" to an act's subject, which was driver's licenses, operation of motor vehicles, and vehicle registrations. See Critchfield, 842 So.2d at 784.
There is no bright line rule this Court can create to determine whether a connection is proper  that is, whether the connection is natural or logical, or if a reasonable explanation exists for how the provision is necessary to the subject or tends to make effective or promote the objects and purposes of legislation included in the subject. Nonetheless, we examine chapter 99-188 against the backdrop of this jurisprudence.

B. Chapter 99-188.
Initially, we determine that Franklin has standing to assert a single subject challenge to chapter 99-188, Laws of Florida, notwithstanding the fact that he *1080 was not directly affected by either section 11 or 13. See Heggs, 759 So.2d at 628 (holding that anyone adversely affected by any of the amendments to the sentencing laws contained in chapter 95-184, Laws of Florida, could obtain relief based on a single subject violation).[27] We begin our analysis by reiterating that our resolution of this case flows from our highly deferential standard of review in this area of the law  that every reasonable doubt should be resolved in favor of a law's constitutionality. See Bunnell, 453 So.2d at 809; Canova, 94 So.2d at 184-85; Colonial Inv. Co., 131 So. at 178; Holton, 9 So. at 717.
The short title of the Act is "An act relating to sentencing." The citation name is the "Three-Strike Violent Felony Offender Act." The full title is lengthy, running two pages and almost one thousand words. As we have explained, the constitution requires that the subject be briefly expressly in the title and we give considerable deference to the Legislature's selection of the title. Based on our determination that ordinarily the subject will be found in the short title, we conclude that the subject of chapter 99-188 is sentencing. In so holding, we agree with the majority analysis in Hernandez-Molina that the subject of the Act is not defined by either its purpose as expressed in the preamble or its citation name in section one  the "Three-Strike Violent Felony Offender Act."
In adopting this straightforward analysis, we reject the State's argument that the subject is broader than sentencing. The State relies on the preamble to support its assertion that the subject of the Act is its general purpose  "protecting the public from the class of felons identified in the Act." The Third District in Franklin also identified the general purpose of the Act as its subject. See 836 So.2d at 1113 ("[E]ach provision of the statute is sufficiently related to the others and to the general purpose of the act as whole...."). Although we agree that one of the stated purposes of the Act is protecting the public, we decline to equate the purpose of the Act with its subject. Based on our holding set forth above, we decline to define the single subject of chapter 99-188 by its object or purpose. As explained below, the Act's purpose is relevant to a determination of whether its provisions are properly connected to its subject.
We now turn to the controverted issue of whether sections 11 and 13 are properly connected to sentencing. The Second District in Taylor determined that sections 11 and 13 lack a proper connection. The test *1081 we utilize is whether there is a natural or logical connection to sentencing, or whether a reasonable explanation exists for how these provisions are either necessary to sentencing or tend to make effective or promote the purposes of the sentencing legislation. Cf. Grant, 770 So.2d at 657; Canova, 94 So.2d at 184.
We first address section 11, which provides that the clerk of the court shall furnish to the INS officers the charging document, judgment, and sentence "in every case in which an alien is convicted of a felony or misdemeanor or enters a plea of guilty or nolo contendre to any felony or misdemeanor charge." Under the language of the provision, this shall be done after the alien offender's sentencing proceeding.
We conclude that there is a natural or logical and thus proper connection between the requirements of section 11 that sentences of non-citizen offenders be provided to INS and the Act's subject of sentencing, in that section 11 is a post-sentencing measure. Our conclusion that the connection is proper is buttressed by the fact that in requiring the transmission of sentences to the INS, section 11 also promotes the Act's purpose of protecting the public from persons sentenced as serious or repeat violent offenders. As stated by the Third District in Franklin and the Fourth District in Hernandez-Molina, section 11 aids in the removal of violent alien offenders from the country after sentence completion. See Franklin, 836 So.2d at 1114; Hernandez-Molina, 860 So.2d at 489. Thus, there is also a reasonable explanation why the Legislature would include a provision that facilitates the removal of non-citizens who are serious or repeat violent offenders after sentence completion in an Act whose subject is sentencing and whose purposes include the use of sentencing to protect the public from this class of criminals.
In reaching this conclusion, we are not persuaded by Franklin's argument that the fact that the section applies to all persons who receive a criminal sentence, whether felony or misdemeanor, violent or nonviolent, first offense or fiftieth, renders this provision in violation of article III, section 6. The inquiry is not whether the section solely relates to the purpose of protecting the public from violent and repeat offenders, but rather whether the section is properly connected to the single subject of sentencing. Accordingly, the inclusion of section 11 does not result in a violation of the single subject clause of article III, section 6.
We next turn to section 13, which expands the substantive crime of burglary to specifically add "railroad vehicle" to the definition of conveyance. The Second District found the relationship between the substantive crime of burglary and sentencing too "tenuous, so dependent on the happenstance of individual cases, that it simply cannot be characterized as natural or logical." Taylor, 818 So.2d at 549. In contrast, the Third and Fourth Districts determined that including section 13 does not violate the single subject clause because the section expands the definition of the crime of armed burglary, which is an offense included in section 775.084, the habitual offender sentencing statute. See Franklin, 836 So.2d at 1113-1114; Hernandez-Molina, 860 So.2d at 490.
We agree with the Third and Fourth Districts. The proper connection between the expanded definition of burglary and sentencing is found in the fact that armed burglary is one of the qualifying offenses for a harsher sentence in the Act. In broadening the definition of conveyance in section 810.11, Florida Statutes, which previously encompassed a "railroad car" but not a "railroad vehicle," the Legislature ensured that a serious crime against a *1082 person inside a railroad vehicle (to wit, a locomotive) will be punished accordingly. See Hernandez-Molina, 860 So.2d at 490.[28] Thus, there is a proper connection to sentencing in that section 13 makes effective one of the purposes included within the subject  imposing harsher sentences on violent offenders. Considering that the purpose of the Act is to protect the public from serious and repeat violent offenders, a reasonable explanation exists for including this substantive section within an Act whose subject is sentencing.
In determining that section 13 did not relate to sentencing and therefore violates article III, section 6, the Second District in Taylor and Judge Cope in his dissenting opinion in Franklin relied, in part, on the fact that section 13 substantively amended the criminal law. See Taylor, 818 So.2d at 549; Franklin, 836 So.2d at 1120 (Cope, J., dissenting). However, we do not consider this fact to be determinative in this case.
In contrast to other acts that we found in violation of the single subject rule because they combined the creation of new crimes with other disparate provisions,[29] in this case, section 13 is one of four sections of the Act that relate to and amend the substantive criminal law. We note that section 7 creates a new category of offender, a repeat sexual batterer; section 8 adds references to the new statute defining "repeat sexual batterer" to the sexual battery statute, section 794.011, wherein "sexual battery" is defined; and section 9 modifies the drug trafficking statute to allow prosecution on the basis of the number of cannabis plants which a person possesses, sells, or delivers, and modifies the weight benchmarks for prosecution. Therefore, similar to section 13, sections 7 and 9 amend substantive crimes. We note that both the Taylor court and Judge Cope in his dissent determined that section 9 was logically related to sentencing because the modified crime was punishable by a mandatory minimum term created by the Act. See Taylor, 818 So.2d at 549; Franklin, 836 So.2d at 1120 (Cope, J., dissenting). The same is true of the new "repeat sexual batterer" offense classification created in section 7.
This reasoning is equally applicable to section 13. Although not every person charged under the modification to the burglary statute contained in section 13 will be subject to a mandatory minimum sentence, the fact remains that armed burglary, which is an aggravated form of the crime modified by section 13, is subject to an enhanced sentence under this Act. Therefore, as with sections 7 and 9, there is a proper connection between section 13 and the single subject of sentencing.
For the reasons stated above, we conclude that sections 11 and 13 are properly connected to the single subject of sentencing. Chapter 99-188 does not violate the single subject clause of article III, section 6 of the Florida Constitution. Accordingly, we approve the Third District's decision *1083 in Franklin, which is before us for review. We also approve the Fourth District's decision in Hernandez-Molina and disapprove the Second District's decision in Taylor.
It is so ordered.
WELLS, CANTERO and BELL, JJ., concur.
QUINCE, J., dissents with an opinion, in which ANSTEAD and LEWIS, JJ., concur.

Appendix A
An act relating to sentencing; creating the "Three-Strike Violent Felony Offender Act"; amending s. 775.082, F.S.; redefining the term "prison releasee reoffender"; revising legislative intent; amending s. 775.084, F.S., relating to sentencing of habitual felony offenders, habitual violent felony offenders, and violent career criminals; redefining the terms "habitual felony offender," "habitual violent felony offender" and "violent career criminal"; revising the alternative time periods within which the habitual felony offender, habitual violent felony offender, or violent career criminal could have committed the felony to be sentenced; providing that the felony to be sentenced could have been committed either while the defendant was serving a prison sentence or other sentence or supervision, or within 5 years of the defendant's release from a prison sentence, probation, community control, or supervision or other sentence, under specified circumstances when the sentence was imposed as a result of a prior conviction for a felony, enumerated felony, or other qualified offense; removing certain references to "commitment" and otherwise conforming terminology; providing that the placing of a person on probation without an adjudication of guilt shall be treated as a prior conviction regardless of when the subsequent offense was committed; defining "three-time violent felony offender"; providing a category of enumerated felony offenses within the definition; requiring the court to sentence a defendant as a three-time violent felony offender and impose certain mandatory minimum terms of imprisonment under specified circumstances when the defendant is to be sentenced for committing or attempting to commit, any of the enumerated felony offenses and the defendant has previously been convicted of committing or attempting to commit, any two of the enumerated felony offenses; providing penalties; providing procedures and criteria for court determination if the defendant is a three-time violent felony offender; providing for sentencing as a three-time violent felony offender; providing mandatory term of imprisonment for life when the three-time violent felony offense for which the defendant is to be sentenced is a felony punishable by life; providing mandatory prison term of 30 years when the three-time violent felony offense is a first degree felony; providing mandatory prison term of 15 years when the three-time violent felony offense is a second degree felony; providing mandatory prison term of 5 years when the three-time violent felony offense is a third degree felony; providing for construction; providing for ineligibility of a three-time violent felony offender for parole, control release, or early release; amending ss. 784.07 and 784.08, F.S.; providing minimum terms of imprisonment for persons convicted of aggravated assault or aggravated battery of a law enforcement officer or a person 65 years of age or older; amending s. 790.235, F.S., relating to prohibitions against, and penalties for, unlawful possession or other unlawful acts involving firearm, electric weapon or device, or concealed weapon by a violent career criminal; conforming cross references to changes made by the *1084 act; creating s. 794.0115, F.S.; defining "repeat sexual batterer"; providing within the definition a category of enumerated felony offenses in violation of s. 794.011, F.S., relating to sexual battery; requiring the court to sentence a defendant as a repeat sexual batterer and impose a 10-year mandatory minimum term of imprisonment under specified circumstances when the defendant is to be sentenced for committing or attempting to commit, any of the enumerated felony violations of s. 794.011, F.S., and the defendant has previously been convicted of committing or attempting to commit, any one of certain enumerated felony offenses involving sexual battery; providing penalties; providing procedures and criteria for court determination if the defendant is a repeat sexual batterer; providing for sentencing as a repeat sexual batterer; providing for construction; amending s. 794.011, F.S., to conform references to changes made by the act; amending s. 893.135, F.S.; defining the term "cannabis plant"; providing mandatory minimum prison terms and mandatory fine amounts for trafficking in cannabis, cocaine, illegal drugs, phencyclidine, methaqualone, amphetamine, or flunitrazepam; providing for sentencing pursuant to the Criminal Punishment Code of offenders convicted of trafficking in specified quantities of cannabis; removing weight caps for various trafficking offenses; providing that an offender who is sentenced to a mandatory minimum term upon conviction of trafficking in specified quantities of cannabis, cocaine, illegal drugs, phencyclidine, methaqualone, amphetamine, or flunitrazepam is not eligible for certain discretionary early-release mechanisms prior to serving the mandatory minimum sentence; providing exceptions; providing penalties; reenacting s. 397.451(7), F.S., relating to the prohibition against dissemination of state funds to service providers convicted of certain offenses, s. 782.04(4)(a), F.S., relating to murder, s. 893.1351(1), F.S., relating to lease or rent for the purpose of trafficking in a controlled substance, s. 903.133, F.S., relating to the prohibition against bail on appeal for certain felony convictions, s. 907.041(4)(b), F.S., relating to pretrial detention and release, s. 921.0022(3)(g), (h), and (i), F.S., relating to the Criminal Punishment Code offense severity ranking chart, s. 921.0024(1)(b), F.S., relating to the Criminal Punishment Code worksheet computations and scoresheets, s. 921.142(2), F.S., relating to sentencing for capital drug trafficking felonies, s. 943.0585, F.S., relating to court-ordered expunction of criminal history records, and s. 943.059, F.S., relating to court-ordered sealing of criminal history records, to incorporate said amendment in references; amending s. 943.0535, F.S., relating to aliens and criminal records; requiring clerk of the courts to furnish criminal records to United States immigration officers; requiring state attorney to assist clerk of the courts in determining which defendants are aliens; requiring the Governor to place public service announcements explaining the provisions of this act; amending ch. 810, F.S.; redefining the term "conveyance" for purposes of ch. 810, F.S., to include a railroad vehicle; providing an effective date.

Appendix B
WHEREAS, in 1996, Florida had the highest violent crime rate of any state in the nation, exceeding the national average by 66 percent, and
WHEREAS, although this state possessed the highest state violent crime rate in 1996 in the nation, the incarceration rate in this state in 1996 was less than the incarceration rate in at least eleven other states, all of which had a lower violent crime rate than the rate in this state, and
*1085 WHEREAS, since 1988, criminals in this state have committed at least 1.6 million violent crimes against Floridians and visitors to this state, and
WHEREAS, the per capita violent crime rate has increased 86 percent in this state in the last 25 years, and
WHEREAS, in fiscal year 1996-1997, over 16,000 violent felons in this state were sentenced to probation, community control, and other punishments that did not incarcerate the violent felon for the maximum prison term authorized by law, and
WHEREAS, during that same fiscal year, less than 9,900 violent felons were sentenced to prison, while during that same period criminals committed approximately 150,000 violent felonies, and
WHEREAS, in this state, as of June 30, 1997, more violent felons were on probation, community control, control release, or parole, than were in state prison, and
WHEREAS, in 1997, only 15.6 percent of all persons convicted of a felony were sentenced to state prison, the second lowest rate of incarcerated felons since 1984, and
WHEREAS, the rate of incarcerated felons has declined seven out of the last eight years, and
WHEREAS, since fiscal year 1993-1994, the per capita prison population rate in this state has increased 10 percent and the proportion of violent offenders incarcerated in state prison has increased 5 percent, and
WHEREAS, since 1995, the Florida Legislature has enacted stronger criminal punishment laws, including requiring all prisoners to serve 85 percent of their court-imposed sentences, and
WHEREAS, since 1994, the violent crime rate in this state has decreased 9.8 percent, and
WHEREAS, the Legislature previously has found that a substantial and disproportionate number of serous crimes are committed in this state by a relatively small number of repeat and violent felony offenders, that priority should be given to the incarceration of career criminals for extended prison terms, and that, in the case of violent career criminals, such extended terms must include substantial minimum terms of imprisonment, and
WHEREAS, as of June 30, 1997, only 71 designated "violent career criminals" have been sentenced to mandatory prison terms, out of a prison population of over 65,000 state inmates; and this number does not approach the true number of repeat violent felony offenders in this state, and
WHEREAS, to be sentenced as a "violent career criminal," a felon must be convicted of a least four violent, forcible, or serious felonies and must have served a prison term, and
WHEREAS, current law does not require the courts to impose mandatory prison terms on violent felons who commit three violent felonies, and these three-time violent felony offenders should be sentenced to mandatary[mandatory] maximum prison terms to protect citizens of this state and visitors, and
WHEREAS, studies such as the recent report issued by the National Center for Policy Analysis, "Does punishment deter?", indicate that recent crime rates have declined because of the increasing number of incarcerated felons, and
WHEREAS, since California enacted "three strike" legislation in 1994 that requires courts to impose mandatory prison terms on repeat felony offenders convicted *1086 of three serious crimes, that state has experienced significant reductions in violent crime, and overall crime rates, and
WHEREAS, a study by the RAND Corporation estimates that the enforcement of this California legislation will reduce serious crime in California committed by adults between 22 and 34 percent, and
WHEREAS, the enactment and enforcement of legislation in Florida that requires courts to impose mandatory prison terms on three-time violent felony offenders will improve public safety by incapacitating repeat offenders who are most likely to murder, rape, rob, or assault innocent victims in our communities, and
WHEREAS, imposing mandatory prison terms on three-time violent felony offenders will prevent such offenders from committing more crimes in our communities, and likely accelerate recent declines in the violent crime rate in this state, NOW, THEREFORE,
Be It Enacted by the Legislature of the State of Florida:....
QUINCE, J., dissenting.
I dissent from the majority's determination that chapter 99-188, Laws of Florida, does not violate the single subject rule of article III, section 6, of the Florida Constitution because the subject is not accurately reflected in the title and because sections 11 and 13 are not properly connected with the subject of the chapter. Therefore, contrary to the majority, I would approve the holding in Taylor v. State, 818 So.2d 544 (Fla. 2d DCA 2002), quash the decision in State v. Franklin, 836 So.2d 1112 (Fla. 3d DCA 2003), and disapprove the decision in Hernandez-Molina v. State, 860 So.2d 483 (Fla. 4th DCA 2003).
Chapter 99-188 contains several sections, most of which deal with either enhanced sentences for repeat criminal offenders or the imposition of minimum mandatory sentences for violent felons. Two sections, section 11 and section 13, however, do not involve sentencing issues at all. As the majority explains, article III, section 6, of the Florida Constitution contains three requirements: (1) each law shall embrace only one subject; (2) the law may include any matter properly connected with that subject; and (3) the subject must be expressed in the title. See majority op. at 1071-72 (citing State v. Thompson, 750 So.2d 643, 646 (Fla.1999)). While I agree with the majority that the broad subject of the chapter is sentencing and that this broad subject is expressed in the title, that is not the complete or specific subject of this chapter. As pointed out by Judge Hazouri in his concurring in part and dissenting in part opinion in Hernandez-Molina v. State, 860 So.2d 483, 491 (Fla. 4th DCA 2003), the more specific subject of chapter 99-188 is "enhanced sentencing for repeat violent felony offenders." All but two of the sections of the chapter pertain to this subject. As we have done on other occasions, we must look beyond the introductory phrase of the chapter, which in this case merely says "an act relating to sentencing," to discern its true subject. See Tormey v. Moore, 824 So.2d 137 (Fla.2002) (rejecting the State's argument that the subject of chapter 89-100, Laws of Florida, was simply "an act relating to criminal penalties"); Heggs v. State, 759 So.2d 620 (Fla.2000); State v. Thompson, 750 So.2d 643 (Fla.2000). Because the true subject of the chapter is not expressed in the title, I would find that there is a violation of the single subject requirement in chapter 99-188.
Additionally, this chapter does not satisfy the requirement of article III, section 6, because sections 11 and 13 are not properly connected to the subject and objective of chapter 99-188. "A connection between a provision and the subject is proper if the *1087 connection is natural or logical, or if there is a reasonable explanation for how the provision is necessary to the subject or tends to make effective or promote the objects and purposes of legislation included in the subject." Majority op. at 1078 (emphasis added). Neither section 11 nor section 13 is naturally or logically connected to the subject of the Act, which is enhanced sentencing for serious offenses.[30] Since neither section is naturally or logically connected to the subject of enhanced sentencing, or to sentencing in general, it is quite evident that neither section is "necessary to the subject" of sentencing. Furthermore, neither section tends to make effective or promote the object and purpose of the chapter, i.e., to protect the public from serious and repeat violent offenders. See majority op. at 1082 ("[T]he purpose of the Act is to protect the public from serious and repeat violent offenders....").
Section 11 requires the clerk of the court to furnish to the appropriate United States immigration officer any records pertaining to any alien who is convicted of a felony or misdemeanor or who pleads guilty or no contest to any felony or misdemeanor charge. Section 11 cannot and does not relate to the chapter's subject of enhanced sentencing for serious felons; rather, "section 11 addresses a purely administrative subject that is far afield of the act's other provisions." Taylor, 818 So.2d at 549. The majority states that section 11 is "a provision that facilitates the removal of non-citizens who are serious or repeat violent offenders after sentence completion." Majority op. at 1081. However, the language in section 11 does not limit the transmission of criminal records for repeat offenders or those convicted of serious crimes. Because section 11 pertains to aliens who are convicted of, or plead guilty or no contest to, misdemeanors as well as all felonies, whether violent or nonviolent, it does not make effective or promote the Act's object of protecting the public from serious and repeat violent offenders.
Section 13 is likewise not connected to the purpose of chapter 99-188. Section 13 adds "railroad vehicle" to the definition of "conveyance" for purposes of the enforcement of Florida's burglary statutes. This provision does not address a minimum or enhanced sentencing requirement for violent or repeat offenders. In fact, the only connection between section 13 and the other provisions in the chapter is that both involve criminal law. Such a connection is insufficient. See, e.g., State v. Johnson, 616 So.2d 1 (Fla.1993) (rejecting the State's argument that chapter 89-280, Laws of Florida, did not violate the single subject requirement because the single subject was controlling crime). Therefore, I would also find that, like section 11, section 13 violates the single subject rule because it is not logically connected to the subject of the chapter.
The majority states that "if, after examining the act in its entirety, we cannot discern a `reasonable explanation' for the inclusion of a seemingly disparate provision, we will look to the history of the legislative process to determine how the challenged provision was added to the Act." Majority op. at 1079. The legislative history of chapter 99-188 reveals that sections 11 and 13 were not a part of the original submissions under this chapter.
When the original House Bill 121 was prefiled on December 8, 1998, neither section *1088 11 nor section 13 was included.[31] On February 17, 1999, section 11 was added by the House Corrections Committee,[32] and the Senate adopted its language in Senate Bill 1746.[33] The Staff Analysis of Senate Bill 1746 reveals that section 11 was added based on an understanding between the Department of Corrections (DOC) and the Immigration and Naturalization Service[34] (INS) that the DOC would assist the INS in the identification of criminal aliens[35] and alleviate the burden that was formerly on the INS to request such information from a clerk of the court.[36] Therefore, it appears that section 11 was intended to be an administrative provision added to the Act in order to shift the burden of disseminating criminal information about aliens from the federal government to the state government. Thus, section 11, an administrative provision, is not similar to the other provisions in the Act which are properly connected with the subject of enhanced sentencing and the objective of protecting the public from serious and repeat violent offenders.
The legislative history of section 13 also supports the conclusion that the section is not connected with and is not similar to the other provisions of the Act. The Second District Court of Appeal analyzed the legislative history of section 13 and explained that section 13 was added only after both the House and Senate approved the bill and the bill went to the Committee on Fiscal Policy. See Taylor v. State, 818 So.2d at 549. Section 13, which adds "railroad vehicle" to the definition of "conveyance" in the burglary statute, is completely unrelated to the subject and objective of the chapter. The legislative history, which demonstrates that the provision was added after the bill was referred to the Committee on Fiscal Policy, does not provide a "reasonable explanation" for the inclusion of this disparate provision.
Thus, chapter 99-188 should be stricken because the subject is not clearly expressed in the title and because sections 11 and 13 are not logically connected to the subject or objective of the legislation.
I would remand this case for resentencing because severance of the offending sections of the chapter will not cure the problem with the title. As this Court found in Colonial Investment Co. v. Nolan, 100 Fla. 1349, 131 So. 178 (1930), and reaffirmed in Heggs v. State, 759 So.2d at 628-629, a chapter law should be invalidated in its entirety when both the title and the body of the chapter are in violation of the single subject rule. It is for this reason I would strike chapter 99-188 in its entirety.
ANSTEAD and LEWIS, JJ., concur.
NOTES
[1] "Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." Art. III, § 6, Fla. Const.
[2] See art. V, § 3(b)(4), Fla. Const.
[3] The full title, consisting of two pages and 938 words, is set forth as Appendix A.
[4] The full preamble, consisting of two pages and 701 words, is set forth as Appendix B.
[5] "Section 1. This act may be cited as the `Three-Strike Violent Felony Offender Act.'"
[6] Franklin does not assert to this Court that section 9 violates the single subject clause.
[7] The Fifth District has agreed with the Second District that the Act violates article III, section 6. See Hersey v. State, 831 So.2d 679 (Fla. 5th DCA 2002) (citing Taylor), receded from in part by Jones v. State, 872 So.2d 938 (Fla. 5th DCA 2004).
[8] The Fourth and First Districts have agreed with the Third District that the Act does not violate the single subject rule. See Hernandez-Molina v. State, 860 So.2d 483 (Fla. 4th DCA 2003) (en banc decision with eight judges concurring and four concurring in part and dissenting in part); Watson v. State, 842 So.2d 275 (Fla. 1st DCA 2003) (affirmance without opinion citing Franklin).
[9] Two other members of the court joined a separate dissent in which Judge Green expressed her agreement with the reasoning of the Second District in Taylor. See Franklin, 836 So.2d at 1115 (Green, J., dissenting).
[10] Armed burglary is one of the enumerated offenses for which a habitual violent felony offender or three-time violent felony offender sentence may be imposed. See § 775.084(1)(b)(1)(m), Fla. Stat. (2003); § 775.084(1)(c)(1)(m), Fla. Stat. (2003).
[11] In fact, the title and preamble together are almost four pages.
[12] Indeed, in its summary analysis, the Third District suggested that there was inconsistency in the single-subject precedent:

The issue of whether a multi-section statute violates the "single subject" rule is one of those perplexing legal controversies in which general rules and decisions embracing them may be found ... on each side of the controversy, and the result, and the group of cases to be cited in support of it, lies ultimately in the eye of the judicial beholder. Since this is true, and since the Supreme Court will necessarily resolve the conflict with Taylor anyway, it is necessary only rather summarily to announce that we believe that each provision of the statute is sufficiently related to the others....
Franklin, 836 So.2d at 1113 (citations omitted).
[13] The treatise relied on by Judge Cope in his dissent cites forty-one states. See Franklin, 836 So.2d at 1124 (citing 1A Norman J. Singer, Statutes and Statutory Construction 17:1 at 2 (6th ed.2002 rev.)). In fact, forty-three states have some type of single subject clause in their constitutions. The treatise does not include Arkansas or Mississippi, whose constitutions contain a single subject requirement solely for appropriations bills. Most of the constitutional single subject clauses of the forty-one states referenced in the treatise are substantially similar to article III, section 6.
[14] The single subject clause was previously contained in article III, section 16 of the Florida Constitution. See art. III, § 16, Fla. Const. (1885). The provision was moved to article III, section 6 in the 1968 constitutional revision.
[15] Starting with Gibson v. State, 16 Fla. 291 (1877), this Court has addressed the single subject clause approximately 135 times. In approximately seventy-five percent of the cases, we have upheld the legislation against attacks based on asserted single subject violations.
[16] Titles are also constitutionally important under article III, section 7 of the Florida Constitution, which requires that prior to passage every bill shall be read by its title "in each house on three separate days." In Kaufman, this Court held that the requirements of article III, section 7 were satisfied by a reading of the bill number or short title. According to the Court,

[t]he obvious purpose of reading a bill's title is to inform the legislators and the public as to what bill is being voted on. Given the widespread publication of copies of bills, reading a bill's number or short title identifies which bill is being considered.
430 So.2d at 907.
[17] Historically, titles tended to be shorter than they are today. Many titles addressed in our earlier single subject cases contained little more than a short phrase with either no or few conjunctions following an introductory clause such as "an act to be entitled." See Sawyer v. State, 100 Fla. 1603, 132 So. 188, 191 (1931) (act entitled "An Act to Define and Punish Arson, and to Repeal Sections 5106, 5107, 5109, 5111 and 5114 of the Revised General Statutes of the State of Florida, Relating Thereto"); Ex Parte Winn, 100 Fla. 1050, 130 So. 621 (1930) (same); Knight, 41 So. at 788 (act entitled "An act to prevent the cutting or removing of any timber from lands heretofore or that may hereafter be sold for taxes"); State ex rel. Gonzalez v. Palmes, 23 Fla. 620, 3 So. 171, 172 (1887) (act entitled "An act to fix the license tax of stevedores").
[18] In Bryan, the title contained forty-one separate provisions. In considering that title, the Court specifically noted:

Let it be frankly admitted that the title to the act in question is decidedly objectionable for many reasons. Among others which might be stated are that it is very prolix, being unduly drawn out, contains much unnecessary matter, is cumbersome, and awkwardly worded. However, no matter how strongly these objections may appeal to us, or however much we may disapprove of the title, that does not help us answer the question, which is, has the provision of the Constitution been violated.
39 So. at 960.
[19] See Hernandez-Molina, 860 So.2d at 489; Franklin, 836 So.2d at 1117 (Cope, J., dissenting).
[20] See Hernandez-Molina, 860 So.2d at 491 (Hazouri, J., concurring in part and dissenting in part); Franklin, 836 So.2d at 1113.
[21] See Taylor, 818 So.2d at 548.
[22] See Hernandez-Molina, 860 So.2d at 491 (Hazouri, J., concurring in part and dissenting in part); Taylor, 818 So.2d at 548.
[23] In Tormey v. Moore, 824 So.2d 137, 140 (Fla.2002), the citation name for chapter 89-100, Laws of Florida, was "The Law Enforcement Protection Act." In his dissenting opinion in Franklin, Judge Cope criticized Tormey for looking to the citation name and preamble of the act in question to determine the act's single subject. See Franklin, 836 So.2d at 1121-22 (Cope J., dissenting). To eliminate any confusion on this issue, we recede from Tormey to the extent that the opinion can be interpreted as relying primarily on the citation name to determine the single subject. See Tormey, 824 So.2d at 140. Nevertheless, in Tormey the violation was one of title defect, i.e., the title did not adequately give notice of all the provisions in the body of the act. Thus, Tormey is distinguishable from the issue before us in this case.
[24] Article XI, section 3 provides:

The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment shall ... embrace but one subject and matter directly connected therewith.
Art. XI, § 3, Fla. Const.
[25] See, e.g., Bunnell, 453 So.2d at 809 (determining that a chapter law which both created crime of obstruction by false information and amended sections dealing with the Florida Council on Criminal Justice violated the single subject rule).
[26] See e.g., Thompson, 750 So.2d at 649 (invalidating act which combined provisions concerning violent career criminal sentencing with provisions concerning civil remedies for victims of domestic violence); Heggs, 759 So.2d at 630 (invalidating act which combined provisions concerning the sentencing guidelines, compensation for crime victims, the definition of substantive crimes, and civil remedies for victims of domestic violence); State v. Johnson, 616 So.2d 1, 4 (Fla.1993) (invalidating act which combined the subject of habitual offenders with licensing for private investigators).
[27] In recognizing Franklin's standing in this Court to assert a single subject violation, we specifically reject the Third District's statement in dicta that the courts have no role in addressing violations of article III, section 6 of the Florida Constitution:

[T]he constitutional facts that Franklin has no right to the passage of legislation in any particular way, and that, to the contrary, the single subject provision affects only the legislators themselves, leads also to consideration of the suggestion that that clause is properly subject only to interpretation and enforcement by the legislature (which frequently engages in just this sort of self-regulation on the floor) and the governor in making his decision on whether to approve a particular bill, rather than the courts. Such a holding would vindicate the sound and often discussed but seldom applied principle that every branch of the government is responsible for the enforcement of pertinent provisions of the constitution.
Franklin, 836 So.2d at 1114 n. 4. A construction of article III, section 6 that precludes persons affected by a law from challenging that law on single subject grounds would be inconsistent with our precedent. See Heggs, 759 So.2d at 627. Therefore, we reaffirm that Franklin has standing to challenge the constitutionality of chapter 99-188, as someone who was adversely affected by the amendments to the sentencing laws contained therein. See Heggs, 759 So.2d at 627.
[28] Burglary of a conveyance with an assault or battery is a first-degree felony punishable by life. See § 810.02(2)(a), Fla. Stat. (2003). Section 810.011 previously referenced railroad cars within the definition of conveyance. As noted by the Fourth District in Hernandez-Molina, the legislative history of section 13 reveals that "vehicle" was added to the definition of conveyance due to a perceived ambiguity in the statute. By previously covering only railroad "cars," the statute had apparently prevented some burglary prosecutions of persons entering railroad locomotives to commit violent offenses against conductors. See Hernandez-Molina, 860 So.2d at 490.
[29] See, e.g., Bunnell, 453 So.2d at 809 (determining that chapter law which both created crime of obstruction by false information and amended sections dealing with the Florida Council on Criminal Justice violated single subject rule).
[30] Even assuming the title of the chapter is sentencing, sections 11 and 13 are not properly connected to this broader topic.
[31] Fla. HB 121 (1999).
[32] Fla. HB 121, § 11, at 79, lines 26-31; 80, lines 1-13 (1999).
[33] Fla. SB 1746, § 11, at 81, lines 26-31; 82, lines 1-13 (1999).
[34] The United States Citizenship and Immigration Service (USCIS) was created by the Homeland Security Act of 2002 to replace the INS. While the INS was part of the United States Department of Justice, the USCIS is part of the United States Department of Homeland Security.
[35] Fla. S. Comm. on Crim. Jus., CS for SB 1746 (1999) Staff Analysis 10 (March 23, 1999) (on file with comm.).
[36] Fla. S. Comm. on Crim. Jus., CS for SB 1746 (1999) Staff Analysis 17 (on file with comm.).